STATE of Wisconsin, Plaintiff-Respondent,†

v.

Terrell A. COLEMAN, Defendant-Appellant.

Court of Appeals

*No. 95–0917–CR. Submitted on briefs December 5, 1995.—Decided January 9, 1996.*

(Also reported in 544 N.W.2d 912.)

†Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Law Offices of Thomas E. Harris*, with *Thomas E. Harris*, of Waukesha.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Sharon Ruhly*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Terrell A. Coleman appeals from the judgment of conviction, following a jury trial, for felon in possession of a firearm, in violation of § 941.29(2), STATS., and from the order denying his motion for postconviction relief. He argues that the trial court erred in denying his request for a jury instruction on self-defense. We agree and, accordingly, reverse and remand for a new trial.

The facts relevant to resolution of this appeal are undisputed. According to the trial testimony, between 8:00 and 9:00 a.m. on October 21, 1992, Coleman arrived at the residence of Tanisha Evans to pick up his nephew and niece. While waiting for the children in the living room, he heard what sounded like kicking at the door. Coleman testified, "I thought it was somebody to come up in there and try and rob it again." Evans and Coleman testified that they had been at the residence previously when four people had committed robbery and one of the robbers put a gun to the heads of Evans and one of her children. Evans and Coleman said that

they had testified at the trial of the gunman and, fearing another robbery, Evans had had her brother purchase a rifle for her. When Coleman heard the noise at the door, he ran to a bedroom, got the rifle from the closet, returned to the living room, and held the rifle aiming it at the door.

In this instance, however, the noise was not made by robbers but by uniformed Milwaukee County deputy sheriffs executing a "no knock" search warrant. One of the officers testified that to execute the "no knock" search warrant, they "had to breach two doors, the outer door and the inner door using forced entry, the hooligan, which is a pry bar type tool and a large ram to make entry to the house." This required approximately five to six seconds during which the officers had to hit the door two or three times. While outside the door, the officers did not identify themselves. As soon as the officers entered they yelled, "Police. Search warrant. Drop the gun." After what an officer described as "an extremely intense probably half a second," Coleman lowered the weapon and "turned and ran into an adjoining bedroom off the living room." The officer testified that Coleman then "threw the gun down onto the bed, turned around and raised his hands up." In response to his lawyer's questions, Coleman testified:

Q: And, when you stood there, what did you then do?
A: I had pointed the rifle at the door and started hollering [to others in the residence] to get up because I think the house is going to get robbed.
Q: And then what happened?
A: Well, while I was saying that, that is when the door had came open and I saw it was the police.
Q: And what did you do then?

A: I stepped back in the room, tossed the gun and put my hands up.

Q: Now, why, when you saw it was the police, did you retreat?

A: Because I didn't know if they was going to just shoot. I wasn't expecting the police.

Q: Again, what were you expecting.

A: Some robbers.

Q: Why did you have the gun out?

A: Because, to defend myself.

Coleman further testified under cross-examination by the prosecutor:

Q: Why didn't you just put up your hands and drop the gun when the police first came through the door?

A: You mean before I stepped in there. That's what they told me to do. I wanted to get out of their way and then do it.

Q: The officer said they had to follow you into the bedroom and had you throw the gun on the bed and then raise your hands. Why didn't you stop where you were, raise your hands with the gun and throw it on the ground to let the police know you weren't dangerous.

A: I was scared.

Q: Scared of what?

A: Them shooting me.

Q: You think you were doing something wrong?

A: Pointing a gun at the police, I think that was wrong.

Q: It was more dangerous to run away from them then [sic] it was to simply drop the gun and put your hands up?

A: I didn't think that at the time.

The defense requested that the trial court instruct the jury on coercion, WIS J I—CRIMINAL 790; self-

178

defense, WIS J I—CRIMINAL 800; self-defense/retreat, WIS J I—CRIMINAL 810; defense of others, WIS J I—CRIMINAL 825; and defense of another's property, WIS J I—CRIMINAL 860. The trial court denied the requested instructions stating, in part:

> And I will acknowledge, I'm troubled by the situation in the case and the facts, but in the final analysis, it seems to me that there has to be more than just a defendant hearing somebody kicking at the door to justify these defenses.
>
> It seems to me that there has to be some basis for the defendant to believe that there was a threat to some threshold level on the record that has to be shown before it becomes even a jury question on those issues and I don't think on this record there is such a basis.
>
> ... [T]here is no record here as to what occurred in the previous robbery. Robbery was never a thought in his mind. He never thought that one was going to happen or never thought . . . particularly that it was going to happen again and there is no testimony as to how the other one happened, so that he could say this was a similar event to that one.
>
> It just suddenly occurred to him apparently to go arm himself with a gun because there was a noise at the door, which he described as kicking and I don't think that that in and of itself is sufficient to allow a felon to arm himself and then claim self-defense or coercion or defense of others.
>
> I would also note that what he did in the robbery case when he heard the robbery was to jump out the window and go call the police. Seems like . . . he could have done that just as easily and I don't want to be put in the position where someone says, well the judge is acting as a juror now and deciding what would have been reasonable. That is not my point.

> My point is that I think there has to be some level of reserved or anticipated danger shown on the record before he is justified in using one of the defenses and I don't think that is here in this record.

On appeal, Coleman argues that "the conclusion is inescapable that the evidence requires submitting the issue of self-defense to the jury."[1] Coleman is correct.

---

[1] On appeal, Coleman does not distinguish among the several self-defense instructions. He focuses on authorities dealing with defense of one's self, one of which also refers to defense of another. Coleman offers no argument on appeal regarding coercion, or defense of another's property. Accordingly, we shall address only whether the trial court erred in denying Coleman's request for self-defense instructions under WIS J I—CRIMINAL 800 and 825.

WIS J I—CRIMINAL 800 provides:

> Self-defense is an issue in this case. The law of self-defense allows a person to threaten or intentionally use force against another under certain circumstances.
>
> The State must prove by evidence which satisfies you beyond a reasonable doubt that the defendant was not acting lawfully in self-defense.
>
> The law allows the defendant to act in self-defense only if the defendant believed that there was an actual or imminent unlawful interference with the defendant's person and believed that the amount of force he used or threatened to use was necessary to prevent or terminate the interference.
>
> In addition, the defendant's beliefs must have been reasonable. A belief may be reasonable even though mistaken. In determining whether the defendant's beliefs were reasonable, the standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense. The reasonableness of the defendant's beliefs must be determined from the standpoint of the defendant at the time of his acts and not from the viewpoint of the jury now.

(Footnotes omitted.)

WIS J I—CRIMINAL 825 provides:

"A defendant is entitled to an instruction on a valid applicable theory of defense if it is timely requested and is supported by credible evidence." *State v. Bernal*, 111 Wis. 2d 280, 282, 330 N.W.2d 219, 220 (Ct. App. 1983). In support of a requested jury instruction, a "defendant has the initial burden of producing evidence to establish a statutory defense to criminal liability." *State v. Stoehr*, 134 Wis. 2d 66, 87, 396 N.W.2d 177, 185 (1986). On appeal from the denial of a requested instruction, " ' "the evidence is to be viewed in the most favorable light it will reasonably admit from the standpoint of the accused." ' " *Id.* (citations omitted). " 'Ultimate resolution of the issue of the appropriateness of giving [a] particular instruction turns on a case-by-case review of the evidence, with

---

Defense of others is an issue in this case. The law of defense of others allows a person to threaten or intentionally use force to defend another under certain circumstances.

The State must prove by evidence which satisfies you beyond a reasonable doubt that the defendant was not acting lawfully in defense of others.

The law allows the defendant to act in defense of others only if the defendant believed that there was an actual or imminent unlawful interference with the person of (name of third person), believed that (name of third person) was entitled to use or to threaten to use force in self-defense, and believed that the amount of force used or threatened by the defendant was necessary for the protection of (name of third person).

In addition, the defendant's beliefs must have been reasonable. A belief may be reasonable even though mistaken. In determining whether the defendant's beliefs were reasonable, the standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense. The reasonableness of the defendant's beliefs must be determined from the standpoint of the defendant at the time of his acts and not from the viewpoint of the jury now.

181

each case necessarily standing on its own factual ground.' " *Id.* (citation omitted; brackets in original).

The self-defense privilege is defined in § 939.48(1), STATS., as follows:

> A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

"Whether an instruction on self-defense should have been given depends upon the evidence . . . ." *Thomas v. State*, 53 Wis. 2d 483, 484, 192 N.W.2d 864, 865 (1972). In viewing the evidence to determine whether a defendant is entitled to the self-defense instruction, the supreme court explained:

> The question for the court is not what the totality of the evidence reveals. Rather, this court must ask only "whether a reasonable construction of the evidence . . . 'viewed in the most favorable light it will "reasonably admit of from the standpoint of the accused" ' " will support the defendant's theory . . . .

*State v. Jones*, 147 Wis. 2d 806, 816, 434 N.W.2d 380, 383 (1989) (citations omitted).

As an initial point, we agree with what Coleman asserts and the State "assume[s] for purposes of this

appeal": that a convicted felon's possession of a firearm may be privileged in some circumstances. *See State v. Anderson,* 137 Wis. 2d 267, 277-278, 404 N.W.2d 100, 104 (Ct. App.), *aff'd on other grounds,* 141 Wis. 2d 653, 416 N.W.2d 276 (1987); *see also* 1 THOMAS J. HAMMER AND ROBERT D. DONOHOO, SUBSTANTIVE CRIMINAL LAW IN WISCONSIN § 893, at 462 (1988) (Wisconsin Court of Appeals "has impliedly recognized the viability of self-defense and defense of others as defense to § 941.29 liability."). Thus, the issue before this court is whether a reasonable construction of the evidence supports Coleman's theory of self-defense when the evidence is " 'viewed in the most favorable light it will "reasonably admit of from the standpoint of the accused." ' " *State v. Mendoza,* 80 Wis. 2d 122, 152, 258 N.W.2d 260, 273 (1977) (citation omitted). Here, even the State's summary of the evidence provides ample basis for the instruction:

> The defendant attempted to establish the justification defense in three principal ways: through cross-examination of the officer who executed the no-knock warrant with regard to the amount of noise the entry would have made and the amount of time involved; through testimony from Tanisha Evans regarding a prior robbery at the house and the reasons she had acquired the gun and had put it in the closet in the defendant's girlfriend's room; and through his own testimony about knowledge of the prior robbery and his responses to the officers' entry. The defendant testified that when he heard the kicking at the door, he "thought it was somebody to come up in there and try and rob it again."

Additionally, we note that Evans also described the dangers of the previous robbery in which a gun was held to her head and to the head of one of her children,

183

and that Evans and Coleman both implied that their testimony in the trial stemming from that robbery left them concerned about possible future robberies.

Thus, although the trial court correctly commented "that there has to be more than just a defendant hearing somebody kicking at the door," the record contains testimony that, in the estimation of a jury, could refute the trial court's conclusion that "[r]obbery was never a thought in [Coleman's] mind." As the supreme court has explained, "neither the trial court nor this court may, under the law, look to the totality of the evidence . . . in determining whether the instruction was warranted. To do so would require the court to weigh the evidence—accepting one version of facts, rejecting another—and thus invade the province of the jury." *Mendoza*, 80 Wis. 2d at 152, 258 N.W.2d at 273.[2] Clearly, in this case, viewing the evidence in the light most favorable to the instruction, Coleman was

---

[2] Further, the additional rationale offered by the trial court, and argued by the State on appeal, also invades the province of the jury. The trial court commented that Coleman had fled the prior robbery by jumping out a window. The State maintains, "[Coleman] explained that when the prior robbery had occurred, he had opened the window in his girlfriend's room, had her 'throw me her son out the window' and then the defendant and the girlfriend 'ran around the corner . . . to call the police.' " The State contends, therefore, that Coleman knew he had a viable alternative to arming himself with the rifle. Whether the State's theory ultimately would seem preposterous to a jury is not for us to declare; clearly, however, as a matter of law the State's theory does not preclude the self-defense instructions. It is well settled that when assessing the reasonableness of a defendant's belief in the need for self-defense, "the jury must apply an objective standard of the 'ordinary intelligent and prudent person "in the position of the defendant under the circumstances existing

entitled to the requested instructions on self-defense and defense of others. Accordingly, a new trial is required.[3]

*By the Court.*—Judgment and order reversed and cause remanded with directions.

---

at the time of the alleged offense." ' " *State v. Mendoza*, 80 Wis. 2d 122, 150, 258 N.W.2d 260, 272 (1977) (citation omitted).

[3] Coleman also argues that trial counsel was ineffective for failing to object to the prosecutor's closing argument that, as an alternate theory, Coleman was in possession of the rifle long before he picked it up that morning. We note, however, that one cannot be held accountable for continuing a violation beginning at a date not alleged in the information. *State v. Kaufman*, 188 Wis. 2d 485, 491-492, 525 N.W.2d 138, 140 (Ct. App. 1994). Having resolved this case on the jury instruction issue, we need not determine the propriety of the prosecutor's closing argument or whether any impropriety would have required a new trial. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).