STATE of Wisconsin, Plaintiff-Respondent,

v.

John V. DUNDON, Jr., Defendant-Appellant.

Supreme Court

*No. 97–1423–CR. Oral argument February 9, 1999.—Decided June 11, 1999.*

(Also reported in 594 N.W.2d 780.)

654

For the defendant-appellant there were briefs and oral argument by *William S. Coleman, Jr.*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Lara M. Herman*, assistant attorney general, with whom on the brief was *James D. Doyle*, attorney general.

¶ 1. DAVID T. PROSSER, J. The issue presented in this case is whether a person may assert a defense of privilege to the crime of carrying a concealed weapon. The issue arises in John V. Dundon, Jr.'s appeal from his conviction under Wis. Stat. § 941.23 (1995–96)[1] and from the denial of his post-conviction motion requesting relief.

## FACTS

¶ 2. John Dundon (Dundon) managed a Clark Oil gas station at 60th Street and Fond du Lac Avenue in

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

northwest Milwaukee. By late June 1995, Dundon had been working at the gas station for 14 or 15 months. His duties included collecting and depositing bank receipts.

¶ 3. The gas station had a safe. On June 21, 1995, the safe was filled to capacity because the station's armored car company (Federal Armored) had not picked up any receipts for four days. The company had failed to come on Saturday the 17th as well as the following Monday and Tuesday. On Wednesday the 21st, Dundon called the company and was told it would send an armored vehicle that day. When the vehicle did not come at the normal pick up time, Dundon called back and the company said it would send a vehicle for an evening pick up. The vehicle never came. Sometime around 10:30 p.m. or 11:00 p.m., an employee called Dundon and advised him that he was unable to drop any more envelopes into the safe.

¶ 4. Dundon later told a jury he could not call another armored car company, and he could not have someone accompany him to the bank. He said his only alternatives were to take the cash to the bank himself or to hide the money in the back room and risk getting fired because it was against company policy, risk other employees knowing he had put a large amount of money in the back room, and risk someone coming in the back room to rob him.

¶ 5. On June 22, knowing that he would have to take about $22,000 ($17,000 of which was cash) to the bank himself, Dundon brought a loaded Raven hand gun to the station.

¶ 6. Dundon kept the gun in his car when he arrived at work. He proceeded to bundle the money, put the bundles into two bags (one made of clear plastic), and wrapped the bags inside a coat. He then

drove to Milwaukee Western Bank at 6001 West Capitol Drive, several minutes from the station. Dundon testified that, after arriving at the bank, he got out of his vehicle, then reached back and took the gun off the passenger seat of the vehicle. He placed the gun on his right hip in the waistband of his blue jeans. Dundon claimed the gun was exposed but that the barrel of the gun was tucked in his waistband and covered by his belt. He then picked up the two large bags of money and went into the bank.

¶ 7. Otis Lee Roberson (Roberson), a security guard at the bank, observed Dundon pull up, get out of his vehicle, reach back into his vehicle and pull a gun out from under the seat. Roberson then observed Dundon tuck the hand gun in his waistband and pull his shirt down. Before Dundon got inside the bank, Roberson told the secretary to call 911 because he saw someone put a gun in his pants. Richard Burdick (Burdick), the bank's vice president, called 911.

¶ 8. After Dundon entered the bank, Roberson observed Dundon approach the teller. He testified he could not see the weapon because it was covered by Dundon's shirt. No disturbance occurred once Dundon was in the bank; in fact, Dundon spoke pleasantly with the bank teller. Seeing this and realizing that Dundon was a frequent customer, Burdick called 911 again and reported that the situation was not threatening and he would wait for the police. The police arrived within two to three minutes. Burdick approached Dundon while Dundon was speaking with the teller and told Dundon that the Milwaukee police wanted to talk to him. According to Burdick, after the officers asked Dundon some questions, Dundon lifted his shirt to reveal the butt end of the weapon. Roberson testified that a police

officer patted Dundon down and took the gun out of his waistband.

¶ 9. On June 23, 1995, Dundon was charged with carrying a concealed weapon contrary to Wis. Stat. § 941.23.

## PROCEDURAL HISTORY

¶ 10. A jury heard the case on March 28, 1996, before Circuit Judge Robert J. Miech. At trial, Judge Miech excluded evidence about the defendant's concern of being a crime target while transporting the funds to the bank. He excluded all proffered evidence of the prevalence of crime in the area, including a recent robbery at the bank, and excluded proffered evidence of Dundon's previous experience as a victim of robberies and robbery attempts, including a claim that he had once been set up and shot at by a gunman. Additionally, Judge Miech denied Dundon's theory of defense instruction on the privilege of necessity.

¶ 11. The next day, the jury returned a verdict of guilty. On April 18, 1996, Judge Miech sentenced Dundon to 45 days in the Milwaukee County House of Correction with Huber privileges.

¶ 12. On April 22, 1996, Dundon filed a Notice of Intent to Pursue Post-conviction Relief. The court stayed his sentence pending post-conviction relief.

¶ 13. On March 10, 1997, Dundon filed a post-conviction motion for a new trial or sentence modification, requesting an evidentiary hearing to support his motion. On April 14, 1997, Circuit Judge Bonnie L. Gordon entered an order denying the post-conviction motion without the requested hearing. Judge Gordon stated that "this Court finds nothing in the record to indicate there has been any abuse of discretion on the part of the sentencing court or any other reason to

modify the sentence imposed. The Court finds that the sentence is not unduly harsh under the particular circumstances in this case." Judge Gordon distinguished Dundon's case from *State v. Coleman*, 206 Wis. 2d 199, 556 N.W.2d 701 (1996), where this court found a narrow defense of privilege to the charge of felon in possession of a firearm. Judge Gordon stated: "Under the five-step analysis set forth in *Coleman*, the defendant fails to satisfy the first test because no reasonable jury could conclude that Dundon was 'under an unlawful, present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury, or the defendant reasonably believes he or she is under such a threat.' "

¶ 14. On May 5, 1997, Dundon filed a timely notice of appeal of both his judgment of conviction and sentence and the order denying his post-conviction motion. On December 23, 1997, the court of appeals certified the appeal to this court under Wis. Stat. (Rule) § 809.61, to decide whether the law of privilege may be asserted as a defense to the crime of carrying a concealed weapon in violation of § 941.23. We accepted the certification "for consideration of all issues raised before the court of appeals."

## ANALYSIS

### I.

¶ 15. To convict a person of carrying a concealed weapon in violation of § 941.23,[2] the State must estab-

---

[2] Wisconsin Stat. § 941.23 provides:

**Carrying a concealed weapon.** Any person except a peace officer who goes armed with a concealed and dangerous weapon is guilty of a Class A misdemeanor.

lish three elements beyond a reasonable doubt.[3] First, the State must show that a person who is not a peace officer went armed with a dangerous weapon.[4] Second, the State must show that the person was aware of the presence of the weapon.[5] Third, the State must show that the weapon was concealed.[6] When Dundon testified that he removed a hand gun from a locked cabinet in his bedroom and carried it loaded either on or under the passenger seat of his vehicle—first to the gas station, then to the bank—and then carried the hand gun into the bank, he admitted all three elements of the offense.[7] The testimony of Roberson and Burdick

[3] *State v. Fry*, 131 Wis. 2d 153, 182, 388 N.W.2d 565 (1986), *cert. denied*, 479 U.S. 989 (1986); Wis JI—Criminal 1335.

[4] In *State v. Asfoor*, 75 Wis. 2d 411, 433–34, 249 N.W.2d 529 (1977), we explained that "going armed" means "that the weapon was on the defendant's person or that the weapon must have been within the defendant's reach and that the defendant was aware of the presence of the weapon."

[5] *See Asfoor*, 75 Wis. 2d at 433 ("Concealing or hiding a weapon precludes inadvertence.").

[6] In *Mularkey v. State*, 201 Wis. 429, 432, 230 N.W. 76 (1930), this court stated: "If the weapon is hidden from ordinary observation it is concealed. Absolute invisibility to other persons is not indispensable to concealment. The test is, was it carried so as not to be discernible by ordinary observation." In *Asfoor* we cited *Mularkey* with approval when we approved an instruction which stated: "If a weapon is hidden from ordinary observation then it is concealed." *Asfoor*, 75 Wis. 2d at 433.

[7] In *State v. Walls*, 190 Wis. 2d 65, 71–72, 526 N.W.2d 765 (Ct. App. 1994) (citing *Fry*, 131 Wis. 2d at 182), the court of appeals held:

> a person is guilty of carrying a concealed weapon in an automobile where: (1) the weapon is located inside a vehicle and is within the defendant's reach; (2) the defendant is aware of the presence of the weapon; and (3) the weapon is concealed, or hidden from ordinary view—meaning it is indiscernible from the ordinary observation of

clearly buttressed the third element of concealment, for the word "concealed" means hidden from ordinary observation; and the weapon does not have to be completely hidden.

¶ 16. What remains is the pivotal issue whether Dundon had a privilege to carry and conceal a loaded hand gun under these circumstances, or, more generically, whether, and to what extent, the defense of privilege is available to a person charged with the crime of carrying a concealed weapon. Whether a crime is subject to a privilege defense and the scope of such a defense if it exists, present questions of law. We review questions of law *de novo. Kara B. v. Dane County*, 205 Wis. 2d 140, 145–46, 555 N.W.2d 630 (1996).

A.

¶ 17. The first issue is whether the defense of privilege applies to the crime of carrying a concealed weapon. The preamble clause of the privilege statute, § 939.45, reads, in part, as follows:

> **Privilege.** The fact that the actor's conduct is privileged, although otherwise criminal, is a defense to prosecution for *any crime* based on that conduct. . . . (Emphasis supplied.)

¶ 18. Use of the phrase "any crime" implies a legislative intent to permit the defense of privilege for "any crime." Yet common sense suggests that the defense of privilege does not fit easily with certain

---

a person located outside and within the immediate vicinity of the vehicle.

Thus, a person who carries a weapon in a car with the weapon in plain view on the front seat may have nonetheless unlawfully concealed the weapon.

662

crimes. Recognition of the privilege for some crimes would undermine the objective in criminalizing conduct. In other instances, the limitations of a privilege may be incompatible with the elements of a crime. In still other situations, the nature of the crime is such that the defense of privilege cannot reasonably apply.

¶ 19. In short, the defense of privilege applies by statute to "any crime" but the defense may be limited for some crimes to extraordinary facts.

■

¶ 20. The second sentence in the preamble clause of the privilege statute provides that "The defense of privilege can be claimed under *any* of the following circumstances: . . ." (Emphasis supplied.) The statute then lists a number of circumstances. But in *Coleman*, we decided that while a crime may be subject to a defense of privilege, the crime may not be subject to *all* the types of privilege outlined in § 939.45.

¶ 21. In *Coleman*, this court recognized a very narrow defense of privilege under § 939.45(6) to the crime of felon in possession of a firearm. The case involved a convicted felon who had possessed a rifle in violation of law. Coleman was visiting his girlfriend's apartment. A month earlier, four men had entered and robbed the apartment, putting a gun to the head of one of the occupants. Coleman had been there and had jumped out a bedroom window to secure assistance from the police. A month later, when police suddenly battered in the door while executing a "no knock" search warrant, Coleman grabbed a rifle in the apartment in the mistaken belief that history was repeating itself. In reviewing the case, this court implied that most provisions of the privilege statute—*i.e.*, subsections (1) through (5) of § 939.45—did not apply to the crime of felon in possession of a firearm. Wis. Stat.

663

§ 941.29(2). Rather, the court looked to subsection (6) to justify a very limited common law privilege. *Coleman*, 206 Wis. 2d 207–12. The court reviewed both state and federal cases from other jurisdictions and concluded that the courts which had considered the issue "overwhelmingly determined that a defense of privilege exists." *Id.* at 208.

¶ 22. The court described § 941.29(2) as a strict liability offense. *Coleman*, 206 Wis. 2d at 207 (citing *State v. Phillips*, 172 Wis. 2d 391, 395, 493 N.W.2d 238 (Ct. App. 1992)). It went on to say that a strict liability offense does not preclude the application of the defense of privilege. It quoted *State v. Brown*, 107 Wis. 2d 44, 53, 318 N.W.2d 370 (1982), that:

> We conclude that recognizing a defense of legal justification does not necessarily conflict with the concept that violation of a traffic law is a strict liability offense. The basic concept of strict liability is that culpability is not an element of the offense and that the state is relieved of the burdensome task of proving the offender's culpable state of mind. When the defendant in the case at bar claims legal justification, he is not seeking to disprove a statutorily required state of mind. Instead he is claiming that even though he knowingly violated the law, his violation was privileged under the circumstances.

*Coleman*, 206 Wis. 2d at 207 n.8.

¶ 23. The crime of carrying a concealed weapon has many of the earmarks of a strict liability offense. Although the offender must have awareness that the weapon is present, the offender need not have culpability or bad purpose. As the court explained in *Brown*,

> One of the objectives of the legislature in adopting the concept of strict liability in statutes designed to

control conduct of many people. . .is to assure the quick and efficient prosecution of large numbers of violators. . . .[T]he legislature will often define the offense[s] in such a way as to avoid the need for lengthy trials.

*Brown*, 107 Wis. 2d at 54.

¶ 24.　Opening up § 941.23 to broad "justification" defenses would create mischief, destroy uniformity, and impose a heavy burden on prosecutors. Hence, to the extent that any privilege in § 939.45 does apply, it must be applied restrictively so as not to undermine the objective of the statute.

### B.

¶ 25.　We are convinced that Dundon was not able to identify any privilege under § 939.45 that would benefit him on the facts of this case. Wisconsin's privilege statute[8] has six parts, and we examine each part in turn.

---

[8] Wisconsin's privilege statute, § 939.45, provides:

**Privilege.** The fact that the actor's conduct is privileged, although otherwise criminal, is a defense to prosecution for any crime based on that conduct. The defense of privilege can be claimed under any of the following circumstances:

(1)　When the actor's conduct occurs under circumstances of coercion or necessity so as to be privileged under s. 939.46 or 939.47; or

(2)　When the actor's conduct is in defense of persons or property under any of the circumstances described in s. 939.48 or 939.49; or

(3)　When the actor's conduct is in good faith and is an apparently authorized and reasonable fulfillment of any duties of a public office; or

(4)　When the actor's conduct is a reasonable accomplishment of a lawful arrest; or

(5)　(a) In this subsection:

¶ 26. First, a privilege exists "When the actor's conduct occurs under circumstances of coercion or necessity so as to be privileged under s. 939.46 or 939.47 . . ." Wis. Stat. § 939.45(1).

¶ 27. The defense of *coercion* exists when "A threat by a person other than the actor's coconspirator. . .causes the actor reasonably to believe that his or her act is the only means of preventing imminent death or great bodily harm to the actor or another and which causes him or her so to act . . ." Wis. Stat. § 939.46(1). Dundon cannot claim the defense of coercion in this case because he did not establish any "threat by a person." Dundon was not coerced by another to act as he did. He was not subjected to severe pressure.

¶ 28. The defense of *necessity* exists when "Pressure of natural physical forces. . .causes the actor reasonably to believe that his or her act is the only

1. "Child" has the meaning specified in s. 948.01(1).

3. "Person responsible for the child's welfare" includes the child's parent, stepparent or guardian; an employe of a public or private residential home, institution or agency in which the child resides or is confined or that provides services to the child; or any other person legally responsible for the child's welfare in a residential setting.

(b) When the actor's conduct is reasonable discipline of a child by a person responsible for the child's welfare. Reasonable discipline may involve only such force as a reasonable person believes is necessary. It is never reasonable discipline to use force which is intended to cause great bodily harm or death or creates an unreasonable risk of great bodily harm or death.

(6) When for any other reason the actor's conduct is privileged by the statutory or common law of this state.

means of preventing imminent public disaster, or imminent death or great bodily harm to the actor or another and which causes him or her so to act . . . " Wis. Stat. § 939.47. In *State v. Olsen*, 99 Wis. 2d 572, 576, 299 N.W.2d 632 (Ct. App. 1980), the court recognized that the defense of necessity is available "only if the person asserting the defense acted under 'pressure of natural physical forces.' " Plainly, the facts in this case do not establish that the "pressure of natural physical forces" caused Dundon reasonably to believe that his act of carrying a concealed weapon was the only means of preventing imminent public disaster or imminent death or great bodily harm to himself or others.

¶ 29. Second, a privilege exists "When the actor's conduct is in defense of persons or property under any of the circumstances described in s. 939.48 or 939.49 . . ." Wis. Stat. § 939.45(2).

¶ 30. Wisconsin Stat. § 939.48 provides a privilege for self-defense or defense of others,[9] while Wis. Stat. § 939.49 provides a privilege for the defense of

---

[9] Wisconsin Stat. § 939.48 provides, in relevant part:

**Self defense and defense of others.** (1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. . . .

. . .

(4) A person is privileged to defend a third person from real or apparent unlawful interference by another under the same conditions and by the same means as those under and by which the person is privileged to defend himself or herself from real or apparent unlawful interference, provided that the person reasonably believes that the facts are such that the third person would be privileged to act in self-defense and that the person's intervention is necessary for the protection of the third person.

. . .

property and protection against retail theft.[10] These privileges do not apply because Dundon's concerns were not specific and imminent; they were only general and potential.

¶ 31. Third, a privilege exists "When the actor's conduct is in good faith and is an apparently authorized and reasonable fulfillment of any duties of a public office . . ." Wis. Stat. § 939.45(3). This privilege does not apply because the facts of this case show no duty of a public office.

¶ 32. Fourth, a privilege exists "When the actor's conduct is a reasonable accomplishment of a lawful arrest . . ." Wis. Stat. § 939.45(4). Dundon was not attempting to accomplish a lawful arrest when he concealed his hand gun.

¶ 33. Fifth, a privilege exists "When the actor's conduct is reasonable discipline of a child by a person responsible for the child's welfare . . ." Wis. Stat. § 939.45(5)(b). This privilege does not apply. It is difficult to conceive of facts that would permit the carrying of a concealed weapon to administer reasonable discipline of a child.

---

(6) In this section "unlawful" means either tortious or expressly prohibited by criminal law or both.

[10] Wisconsin Stat. § 939.49 provides, in relevant part:

**Defense of property and protection against retail theft.** (1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with the person's property. . . .

. . .

(2) A person is privileged to defend a 3rd person's property from real or apparent unlawful interference by another under the same conditions and by the same means as those under and by which the person is privileged to defend his or her own property. . . .

¶ 34. Sixth, a privilege exists "When for any other reason the actor's conduct is privileged by the statutory or common law of this state." Wis. Stat. § 939.45(6).[11] Dundon claims this specific enumerated privilege permits the common law privilege recognized in *Coleman* for felon in possession to apply in this case.

¶ 35. According to Dundon, the rationale for finding a privilege for carrying a concealed weapon is more compelling than the rationale applied in *Coleman* for felon in possession. Dundon states that §§ 941.23 and 939.45 were enacted together in 1955 as part of a comprehensive criminal code. *See* § 1, ch. 696, Laws of 1955. Dundon also contends that it would be logically inconsistent to allow a privilege defense to felon in possession but not to carrying a concealed weapon because felon in possession, being a felony, is a more serious crime than the misdemeanor in this case. Dundon thus asserts that the privilege created in *Cole-*

---

[11] As an explanation to the defense of privilege statute and its "catch all" subsection, the *1953 Legislative Council Report on the Criminal Code* comment to Wis. Stat. § 339.45 (subsequently Wis. Stat. § 939.45) noted:

> This section deals with the defense of privilege—sometimes called "justification" or "excuse". The law long has recognized the fact that certain conduct has, under some circumstances, sufficient value to society so that it ought not to subject the actor to criminal liability even though the conduct falls within the language of a section defining a crime. . . .Some of these privileges are of great practical importance in the criminal law, arise frequently, and have been fairly well defined by the courts. Others arise only rarely, and their precise limits never have been clearly determined. No attempt has been made to codify the whole law of privilege. *Some of the more important privileges have been codified; as to the others, the common law will prevail.* (Emphasis supplied.)

Subsection 6 permits other statutory privileges and common law privileges to be recognized and used.

*man* should apply to the crime of carrying a concealed weapon.

¶ 36. In *Coleman*, we recognized that "a narrow defense of privilege under Wis. Stat. § 939.45(6) exists to a charge of felon in possession of a firearm." *Coleman*, 206 Wis. 2d at 210. The privilege contained a five-part test which was derived from numerous cases cited in the opinion.[12] Dundon points to *Coleman*, but he fails to point to case law recognizing a common law defense of privilege for the crime of carrying a con-

---

[12] The court in *Coleman* established the following test to describe the common law privilege for felons in possession:

> In order to be entitled to the defense, the defendant must prove: (1) the defendant was under an unlawful, present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury, or the defendant reasonably believes he or she is under such a threat; (2) the defendant did not recklessly or negligently place himself or herself in a situation in which it was probable that he or she would be forced to possess a firearm; (3) the defendant had no reasonable, legal alternative to possessing a firearm, or reasonably believed that he or she had no such alternative; in other words, the defendant did not have a chance to refuse to possess the firearm and also to avoid the threatened harm, or reasonably believed that he or she did not have such a chance; (4) a direct causal relationship may be reasonably anticipated between possessing a firearm and the avoidance of the threatened harm; (5) the defendant did not possess the firearm for any longer than reasonably necessary.

*State v. Coleman*, 206 Wis. 2d 199, 210–11, 556 N.W.2d 701 (1996).

We also noted "that a defendant will be able to establish these elements 'only on the rarest of occasions,' because of the difficulty in proving that he or she did not have a reasonable legal alternative to violating the law, and that he or she possessed the firearm for a period of time no longer than reasonably necessary." *Id.* at 212 (citing *United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996); *United States v. Perrin*, 45 F.3d 869, 874 (4th Cir. 1995), *cert. denied*, 515 U.S. 1126 (1995)).

cealed weapon. We decline to extend the privilege recognized in *Coleman* to the unrelated crime of carrying a concealed weapon.

## C.

¶ 37. Wisconsin has not recognized any unique statutory or common law privilege to the crime of carrying a concealed weapon for more than 120 years. Tracing the history of § 941.23 is illuminating.

¶ 38. The Wisconsin legislature passed the first concealed weapons law in 1872. The chapter provided:

> If any person shall go armed with a concealed dirk, dagger, sword, pistol, or pistols, revolver, slung-shot, brass knuckles, or other offensive and dangerous weapon, he shall, on conviction thereof, be adjudged guilty of a misdemeanor, and shall be punished by imprisonment in the state prison for a term of not more than two years, or by imprisonment in the county jail of the proper county not more than twelve months, or by fine not exceeding five hundred dollars, together with the costs of prosecution, or by both said fine and costs and either of said imprisonments; and he may also be required to find sureties for keeping the peace and against the further violation of this act for a term not exceeding two years: provided, that *so going armed shall not be deemed a violation of this act whenever it shall be made to appear that such person had reasonable cause to fear an assault or other injury or violence to his person, or to his family or property, or to any person under his immediate care or custody, or entitled to his protection or assistance, or if it be made to appear that his possession of such weapon was for a temporary purpose, and with harmless intent.*

§ 1, ch. 7, Laws of 1872 (emphasis supplied). As originally enacted, the stated exceptions in the statute might well have provided Dundon a defense. He might have been able to argue that he had "reasonable cause to fear an assault or other injury or violence to his person" or that his possession of the hand gun was for "a temporary purpose, and with harmless intent."

¶ 39. But these exceptions were repealed. In 1878, only six years after first passing the original concealed weapons statute, the legislature significantly revised it, eliminating the broad exceptions and producing a short, direct prohibition:

> Any person who shall go armed with any concealed and dangerous weapon, shall be punished by imprisonment in the county jail not more than six months, or by fine not exceeding one hundred dollars: provided, this section shall not apply to any policeman or officer authorized to serve process.

Wis. Stat. § 4397 (1878). After that legislative action the only remaining exception was for police officers. The statute has remained substantively the same since 1878.[13]

¶ 40. Hence, the history of the concealed weapons statute in Wisconsin is unambiguous: More than 120 years ago, our legislature revoked the very privilege Dundon now asks this court to create. We cannot comply with his request without exceeding the role the

---

[13] Section 4397 was renumbered as Wis. Stat. § 340.69 in 1925. § 1, ch. 4, Laws of 1925. In 1953, the legislature repealed § 340.69 and adopted Wis. Stat. § 341.23, a statute very similar to the current statute. § 2, ch. 623, Laws of 1953. In 1955, this statute was repealed and renumbered, with minimal changes, as the current Wis. Stat. § 941.23. § 1, ch. 969, Laws of 1955.

constitution assigns to the judicial branch in our system of government.

¶ 41. Forty-three states have legislative enactments permitting citizens to carry concealed weapons under a variety of conditions and circumstances.[14] The existence of these many statutes underscores the impropriety of the judiciary attempting to act in this controversial policy area which is so clearly the province of other branches.

## II.

¶ 42. We accepted certification "for consideration of all issues raised before the court of appeals," and therefore we must also address other issues raised in Dundon's case. In addition to claiming that a defense of privilege exists to the crime of carrying a concealed weapon, Dundon claims that the circuit court denied him his right to present this "privilege" theory of defense by (1) excluding evidence relevant to the defense, (2) refusing to permit him to argue the defense to the jury, and (3) refusing to instruct the jury on the defense. Inasmuch as no defense of privilege to the crime of carrying a concealed weapon was or could have been established by Dundon in this case, these "sub-issues" are easily dealt with. In short, Judge Miech did not commit error by excluding evidence to support an invalid defense, refusing to permit Dundon to argue that defense to the jury, and refusing to instruct the jury on the defense.

---

[14] *See* Todd Barnet, *Gun "Control" Laws Violate the Second Amendment and May Lead To Higher Crime Rates*, 63 Mo. L. Rev. 155, 180–81 (1998); Donnie E. Martin, *"Concealed Carry" Legislation and Workplace Violence: A Nightmare in Employers' Liability?*, 65 Def. Couns. J. 100, 101 (1998).

¶ 43. First, we address whether it was error to exclude evidence in support of a privilege defense. The court of appeals in *Olsen*, 99 Wis. 2d at 577–78, stated:

> In virtually all circumstances a trial court must hear an offer of proof to determine whether the evidence would support a defense before ruling whether evidence relating to that defense is relevant. Here, however, the court determined that the defense of necessity was not available because defendant's actions were not caused by the pressure of a natural physical force. It was not necessary for the trial court to take evidence to make this determination, for it was clear from the arguments of counsel that this was strictly a question of law; no offer of proof could have shown that the defendant responded to a natural physical force. For this reason, the trial court did not err in ruling on the state's motion in limine without first hearing defendant's offer of proof.

Thus, while the general rule in this state is that a circuit court must hear an offer of proof to determine whether evidence would support a proffered defense before ruling on the relevancy of the evidence, it is not error for a circuit court to exclude evidence where it is clear that an offer of proof could not have shown that the defense was applicable.

¶ 44. In this case, Judge Miech correctly determined that with these facts, privilege is an invalid defense to the crime of carrying a concealed weapon. Therefore, Judge Miech was not in error for excluding evidence offered in support of an invalid defense.

██

¶ 45. Second, we determine whether the judge erred by not allowing Dundon to argue the defense of privilege to the jury. A defendant is not entitled to have

the jury consider his or her theory of defense when there is no evidence to support it. *See Olsen*, 99 Wis. 2d at 578–79 (citing *Johnson v. State*, 85 Wis. 2d 22, 270 N.W.2d 153 (1978)); *see also State v. Bjerkaas*, 163 Wis. 2d 949, 954, 472 N.W.2d 615 (Ct. App. 1991). Having just concluded that Judge Miech did not err by not allowing evidence in support of an invalid defense, it is clear that Dundon was not entitled to argue a defense of privilege to the jury because there was no evidence to support such a defense.

¶ 46. Third, we consider whether Judge Miech erred in refusing to instruct the jury on the defense of privilege. "A defendant is entitled to an instruction on a valid applicable theory of defense if it is timely requested and is supported by credible evidence." *State v. Bernal*, 111 Wis. 2d 280, 282, 330 N.W.2d 219 (Ct. App. 1983). However, a circuit court has broad discretion in deciding whether to give a requested jury instruction. *State v. Vick*, 104 Wis. 2d 678, 690, 312 N.W.2d 489 (1981). We will not reverse such a determination absent an erroneous exercise of discretion. *State v. Morgan*, 195 Wis. 2d 388, 448, 536 N.W.2d 425 (Ct. App. 1995). Here we have already determined that there was no valid theory of defense. Therefore, it was not an erroneous exercise of discretion to refuse to instruct the jury on an invalid defense.

### III.

¶ 47. Finally, we must address whether the postconviction court erred in failing to grant an evidentiary hearing on Dundon's claim of ineffective assistance of counsel.

¶ 48. Dundon claims his trial counsel was ineffective for failing to request jury instructions on the

675

privilege defenses of "Self-defense," Wis JI-Criminal 800, or "Defense of Another's Property," Wis JI-Crim 860. Dundon claims that the court of appeals' decision in *State v. Coleman*, 199 Wis. 2d 174, 544 N.W.2d 912 (Ct. App. 1996), established that the privilege defenses of self-defense and defense of others were available in a prosecution for felon in possession of a firearm. Dundon also cites *State v. Anderson*, 137 Wis. 2d 267, 277–78, 404 N.W.2d 100 (Ct. App. 1987), *aff'd on other grounds*, 141 Wis. 2d 653, 416 N.W.2d 276 (1987), for the proposition that long standing case law in Wisconsin impliedly recognized the privilege defenses of self-defense and defense of others property to a charge of felon in possession of a firearm. Finally, Dundon asserts that other jurisdictions identified a similar privilege defense to felon in possession of a firearm. Therefore, he argues, his counsel performed ineffectively by not citing *Coleman* and requesting instructions on self-defense and defense of another's property for Dundon's alleged crime.

¶ 49. As established earlier, Dundon was not entitled to an instruction on any privilege defense. Therefore, the post-conviction court did not err when it denied Dundon an evidentiary hearing on his claim of ineffective assistance of counsel. We would be hard pressed to conclude that Dundon's counsel performed deficiently in failing to request a jury instruction to an invalid defense. *See State v. Ambuehl*, 145 Wis. 2d 343, 352, 425 N.W.2d 649 (Ct. App. 1988). Nothing that Dundon's counsel did or failed to do on the instructions deprived Dundon of a fair trial.

## CONCLUSION

¶ 50. To sum up, we reject the defendant's request to extend the narrow defense of privilege we recognized for the crime of felon in possession of a firearm to the separate and distinct crime of carrying a concealed weapon. We find no basis for either a statutory or common law defense of privilege for the crime of carrying a concealed weapon under § 939.45(6). Although other privilege defenses outlined in § 939.45 may apply to the crime of carrying a concealed weapon, we find no possible basis for their application to the facts in this case. Therefore, the circuit court did not err by excluding evidence to support an invalid defense, by refusing to permit the defendant to argue an invalid defense to the jury, or by refusing to instruct the jury on an invalid defense. Finally, the post-conviction court did not err in failing to grant an evidentiary hearing on the defendant's claim that his attorney acted deficiently by not requesting an instruction on self-defense or defense of others. Dundon was not entitled to any instruction on a privilege defense on these facts.

¶ 51. There is no evidence that the defendant is a bad person. There is ample evidence that he violated the law. Consequently, we affirm the judgment and order of the circuit court.

*By the Court.*—The judgment and order of the circuit court are affirmed.