STATE of Wisconsin, Plaintiff-Respondent,

v.

Tony NOLLIE, Defendant-Appellant.

Supreme Court

*No. 00–0744–CR. Oral argument October 4, 2001.—Decided January 23, 2002.*

2002 WI 4

(Also reported in 638 N.W.2d 280.)

For the defendant-appellant there were briefs by *Erich C. Straub* and *Kachelski, Atta & Straub, S.C.,* Milwaukee, and oral argument by *Erich C. Straub.*

For the plaintiff-respondent the cause was argued by *Lara M. Herman,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1.　JON P. WILCOX, J.　　In this case, we are asked to review a judgment of the Milwaukee County Circuit Court, Maxine A. White, Circuit Court Judge, which prevented a defendant from asserting the privilege of self-defense to the crime of carrying a concealed weapon. We hold that the circuit court was correct in disallowing the defense under the facts of this case and, for that reason, we need not answer the question of when, if ever, the privilege of self-defense may be asserted for the crime of carrying a concealed weapon.

¶ 2.　The defendant, Tony Nollie, was charged with carrying a concealed weapon in violation of Wis.

Stat. § 941.23 (1999–2000).[1] Before trial, the State moved to exclude Nollie's statement to police that he carried a gun because he had previously been the victim of a robbery. Nollie made an offer of proof that he would rely on this statement and other facts in asserting the privilege of self-defense under Wis. Stat. § 939.45(2). The circuit court granted the State's motion, and Nollie was convicted at a jury trial. Nollie appealed from his conviction and the court of appeals certified the case to this court pursuant to Wis. Stat. § (Rule) 809.61. We affirm the judgment of the circuit court.

I

¶ 3.   At 1:30 a.m. on April 1, 1999, Milwaukee Police Officers Glenn Podlesnik and Stephen Pederson were on patrol when they saw what appeared to be an abandoned car in the parking lot of a McDonald's restaurant on the corner of 27th Street and Capitol Drive in Milwaukee. The officers noticed that the car was up on a jack, the trunk was open and there were some toolboxes and other items outside of the vehicle. When they approached the car, they found Nollie in the driver's seat.

¶ 4.   There is a dispute over what Nollie was doing when the police discovered him. The police testified that Nollie had been asleep in the front seat, and that they had to wake him up before they could ask him to exit the vehicle. Nollie claims that he injured his back while changing his tire, and that he merely sat down to rest.

¶ 5.   The police asked Nollie to exit the vehicle. As Nollie got out of the vehicle, the officers noticed the

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

handle of a pistol protruding from Nollie's waistband. The police questioned Nollie about the weapon. Nollie admitted that the pistol was his and stated that he carried a gun because he had been robbed before. Nollie was cooperative with the officers at all times during the encounter.

¶ 6. Nollie was arrested and charged with carrying a concealed weapon in violation of Wis. Stat. § 941.23. Before trial, the State moved to suppress Nollie's statement about his previous victimization on the grounds that the statement was irrelevant and prejudicial. Nollie argued that *State v. Dundon,* 226 Wis. 2d 654, 594 N.W.2d 780 (1999), allows a defendant to assert the privilege of self-defense to the crime of carrying a concealed weapon and that his statement was relevant to that defense.

¶ 7. Nollie then made the following offer of proof. Shortly before 1:30 a.m., Nollie had pulled into the McDonald's parking lot to change a flat tire. While he was changing the tire, Nollie noticed four young men standing at the corner bus stop about 30 feet away. Nollie claimed that he felt threatened because he was in a high crime neighborhood,[2] it was late at night, and these young men were very loud and profane. Nollie also claimed that he was frightened because he previously had been the victim of crime several times in the same neighborhood, including an armed robbery in which he had been physically assaulted.

¶ 8. Nollie kept a lawfully-owned pistol in the trunk of his car, where it was unloaded and stored in a toolbox. The ammunition was stored in a separate

---

[2] Based on the testimony of the officers, the State agreed that this neighborhood had a high crime rate, particularly at night.

toolbox in the trunk. Worried that the men on the corner might try to rob him, Nollie went to his trunk, loaded his pistol, placed it in his waistband, and went back to changing his tire. Nollie claims that he injured his back while removing the tire and sat down in the car to rest. At some time after this point, the officers made contact with him.

¶ 9. Neither Nollie nor the State presented evidence that the young men on the corner had been aware of Nollie's presence, or that the men had reacted to Nollie in any way. There was also no evidence that the four men had seen Nollie arm himself, or that the men had reacted when Nollie actually armed himself. The officers testified that at the time they made contact with Nollie, there was no one standing on the corner by the bus stop. Nollie does not dispute this fact.

¶ 10. After reviewing *Dundon,* the circuit court granted the State's motion to exclude Nollie's statement and did not allow Nollie to present a claim of self-defense. The circuit court noted that *Dundon* only allowed a claim of self-defense to carrying a concealed weapon in extremely narrow circumstances, and the facts of Nollie's case did not meet the requirements.

¶ 11. Nollie went to trial and was convicted by the jury of carrying a concealed weapon. The jury was not instructed on the self-defense privilege. On appeal, Nollie challenged the circuit court's ruling that he could not present a claim of self-defense. Recognizing the significance and impact of this case, the court of appeals certified the case to this court. We now affirm the holding of the circuit court.

II

¶ 12. The Wisconsin Statutes explicitly recognize the defense of privilege. *See* Wis. Stat. § 939.45. An

543

actor's conduct, although otherwise criminal, is legally justified when it occurs under one of several circumstances recognized by statute. *Id.* If the actor's conduct occurs under circumstances of coercion or necessity, the conduct is privileged. Wis. Stat. §§ 939.45(1), 939.46, 939.47. Likewise, an act is privileged if it is done in defense of persons or property. Wis. Stat. §§ 939.45(2), 939.48, 939.49. Wisconsin also recognizes privileges for the good faith performance of the duties of a public office, Wis. Stat. § 939.45(3); for the reasonable effectuation of a lawful arrest, Wis. Stat. § 939.45(4); and for the reasonable discipline of a child by a person responsible for the child's welfare, Wis. Stat. § 939.45(5). Finally, the privilege statute contains a "catch-all" provision, which incorporates any other privilege recognized by statutory or common law. Wis. Stat. § 939.45(6). Each of these privileges may be raised as a defense to a criminal charge.

■

¶ 13.   The statute's language also indicates that the defense of privilege is available for "any crime" when the privileged activity is the basis for the criminal conduct. Wis. Stat. § 939.45. Although the defense of privilege is commonly used by defendants charged with crimes that require a mental state such as homicide, *see, e.g., Cleghorn v. State,* 55 Wis. 2d 466, 468–69, 198 N.W.2d 577 (1972); or other assaultive offenses, *see, e.g., State v. Paulson,* 106 Wis. 2d 96, 97–99, 315 N.W.2d 350 (1982), this court has noted that the concept of privilege does not necessarily conflict with a strict liability offense.[3] *State v. Brown,* 107 Wis. 2d 44, 53, 318 N.W.2d

---

[3] On the face of the statute, carrying a concealed weapon is a strict liability offense. *See* Wis. Stat. § 941.23. However, this court has recognized that there is a limited mental state

370 (1982). For instance, this court has recognized a common law privilege under § 939.45(6) as a defense to the crime of felon in possession of a firearm, Wis. Stat. § 941.29. *State v. Coleman,* 206 Wis. 2d 199, 210, 556 N.W.2d 701 (1996). Still, this court has also recognized that not all crimes are amenable to all privilege defenses. Whether a crime is amenable to the privilege of self-defense is a question of law, which we review de novo. *Dundon,* 226 Wis.2d at 662.

¶ 14.  In *Dundon,* this court refused to extend the common law privilege found in *Coleman* to the crime of carrying a concealed weapon. *Dundon,* 226 Wis. 2d at 665. In *Dundon,* the defendant worked at a gas station, where his duties included collecting and depositing bank receipts. *Id.* at 657. The gas station's safe had filled up because the armored car had not come for four days and Dundon was forced to take the money—which included about $17,000 cash—to the bank himself. Dundon had brought a handgun from home, which he took with him on his trip to the bank. When Dundon got to the bank, he tucked the gun in his waistband and went inside. A security guard saw the weapon and immediately contacted the police. No disturbance occurred while Dundon was in the bank, but when the police arrived, they patted Dundon down, found the gun, and arrested him for carrying a concealed weapon.

¶ 15.  At trial, Dundon argued that he was privileged to carry the gun out of necessity. The trial court denied this defense and prevented Dundon from put-

required—that the defendant is aware of the weapon's presence. *State v. Asfoor,* 75 Wis. 2d 411, 415, 249 N.W.2d 529 (1977). Here, there is no question that Nollie was aware of the weapon's presence.

545

ting forth any testimony about the prevalence of crime in the area or about Dundon's previous experience as a robbery victim.

¶ 16. On appeal, this court upheld the trial court's decision on narrow grounds. This court first dismissed the privileges listed in Wis. Stat. § 939.45(1)-(5) as inapplicable based on the facts of the case. Most notably, this court did not allow Dundon to argue self-defense under § 939.45(2) because Dundon's concerns were "not specific and imminent; they were only general and potential." *Dundon,* 226 Wis. 2d at 667–68. The court then turned to subsection (6), the "catch-all" section, to determine if any common law privilege applied.

¶ 17. Dundon argued that the common law privilege found by this court in *Coleman,* 206 Wis. 2d 199, should also apply in his case, but this court refused to apply the *Coleman* privilege. This court noted that in 1878, the legislature had explicitly revoked the exact privilege sought by Dundon, and the court would be exceeding its authority if it reinstated it. *Dundon,* 226 Wis. 2d at 672–73. This court warned that opening up the prohibition on carrying a concealed weapon to broad justification defenses "would create mischief, destroy uniformity, and impose a heavy burden on prosecutors" and that any privilege "must be applied restrictively so as not to undermine the objective of the statute." *Id.* at 665.[4]

---

[4] As in *Dundon,* we note that the privilege afforded in the pre-1878 statute might also have applied in this case:

> If any person shall go armed with a concealed [weapon] . . . he shall, on conviction thereof, be adjudged guilty of a misdemeanor . . . provided, that *so going armed shall not be deemed a*

¶ 18. Here, Nollie agrees that application of the *Coleman* privilege to his case has been foreclosed by this court's holding in *Dundon*. He notes, however, that this court left open the question of whether carrying a concealed weapon can be privileged under the self-defense section, § 939.45(2), and argues that his circumstances fit this privilege. We disagree, and hold that Nollie's circumstances do not present an appropriate case to assert the privilege of self-defense.

¶ 19. To sustain a claim of self-defense the defendant must show that (1) the defendant had an actual and reasonable belief that there was an actual or imminent unlawful interference with the defendant's person; (2) the defendant had the actual and reasonable belief that the threat or use of force was necessary; and (3) that the defendant only used such threat or force as he actually and reasonably believed was necessary. Wis. Stat. § 939.48(1).

> violation of this act whenever it shall be made to appear that such person had reasonable cause to fear assault or other injury or violence to his person . . .

*Dundon,* 226 Wis. 2d 654, 671–72, 594 N.W.2d 780 (1999) (quoting § 1, ch.7, Laws of 1872)(emphasis added). In *Dundon,* we recognized that the legislature had explicitly repealed the privilege sought by the defendant, and we were careful not to intrude upon the realm of the legislative branch by reinstating the privilege as one found under common law. However, unlike *Dundon* where the court was dealing with the common law *Coleman* privilege, the concern about overstepping our bounds does not arise here because we are deciding the applicability of an explicit statutory privilege that has been enacted by the legislature.

¶ 20. In determining whether a defendant is entitled to assert the privilege of self-defense, we must view the facts in the light most favorable to the defendant. *State v. Mendoza,* 80 Wis. 2d 122, 153, 258 N.W.2d 260 (1977). The general rule is that the circuit court must hear an offer of proof from the defendant to determine whether the evidence would support the proffered defense. *Dundon,* 226 Wis. 2d at 674. However, a defendant is not entitled to have the jury consider a theory of self-defense when there is no evidence to support it. *Id.* at 674–75; *State v. Olsen,* 99 Wis. 2d 572, 578–79, 299 N.W.2d 632 (Ct. App. 1980). It is not an error for a circuit court to exclude evidence of self-defense where it is clear that an offer of proof does not show that self-defense was applicable. *Dundon,* 226 Wis. 2d at 674. Here, we find that Nollie did not make a showing in his offer of proof that would have supported his presenting a claim of self-defense.

¶ 21. As we stated in *Dundon,* "the defense of privilege applies by statute to 'any crime' but the defense may be limited for some crimes to extraordinary facts." *Id.* at 663. Any privilege that would justify carrying a concealed weapon must be extremely narrow and must not undermine the purpose of the statute. *Id.* at 665. Like the crime of felon in possession of a firearm, the nature of carrying a concealed weapon only makes a privilege available on the "rarest of occasions." *Coleman,* 206 Wis. 2d at 210–12. It will be difficult for a defendant to show that there was not a reasonable alternative to violating the law, and that the firearm was not possessed for longer than reasonably necessary.

*Id.* at 212 (citing *United States v. Perez,* 86 F.3d 735, 737 (7th Cir. 1996); *United States v. Perrin,* 45 F.3d 869, 874 (4th Cir. 1995)).

¶ 22. Nollie argues that the facts of his case are specific and extraordinary enough to allow the privilege of self-defense to be applied to the crime of carrying a concealed weapon, unlike in *Dundon* where this court found the threat too "general and potential." *Dundon,* 226 Wis. 2d at 668. Although both Nollie and Dundon cited the "high crime" nature of the neighborhood and previous victimization as factors in their claims of self-defense, Nollie asserts that his case is distinguishable from *Dundon.* First, Nollie's situation took place late at night, whereas Dundon had been transporting the money during the day. Additionally, while changing his tire, Nollie was in a much more vulnerable position than Dundon, who had been driving in a car. Nollie argues that he was essentially stranded with very limited means of escape if trouble were to start.

¶ 23. Most importantly, though, Nollie argues that he was faced with a specific threat: the four young men who were nearby, being loud and profane. Nollie asserts that he only armed himself in response to this particular scenario, and that the situation was specific enough to overcome the restriction on "general and potential" threats imposed by this court in *Dundon.* Although we agree that Nollie's situation involved a more specific threat than Dundon's, we still find that Nollie did not make a sufficient showing to present a claim of self-defense.

██

¶ 24. To argue self-defense, Nollie's offer of proof must indicate that he had an actual and reasonable belief of actual or imminent unlawful interference. In this case, there was no actual or imminent unlawful

interference to speak of. As we stated in *Dundon,* a general and potential threat of interference is not enough to invoke the self-defense privilege; the threat must be imminent and specific. *Dundon,* 226 Wis. 2d at 667–68. Nollie asserts that the four men on the street corner presented a specific threat. Although we agree that they may have presented a more specific threat than the ones perceived by Dundon, the threats perceived by Nollie were not imminent and were still too general to invoke the privilege. Even when viewed in the light most favorable to Nollie, there was no indication that the men threatened, accosted, communicated, or even *noticed* Nollie at any time. This situation does not present a threat imminent and specific enough for Nollie to invoke the privilege of self-defense. Affording a person the privilege of carrying a concealed weapon for self-defense under such circumstances clearly does not comport with the legislature's intent in criminalizing carrying a concealed weapon.

¶ 25.   Furthermore, when the police officers arrived, Nollie was still armed, he was sitting in his car, and the four young men were nowhere to be seen. Nollie does not contest this. At that point in time, the specific threat alleged by Nollie was gone. The only threat that Nollie could point to then was the high incidence of crime in the neighborhood—clearly not a specific and imminent threat.

¶ 26.   In *Coleman,* we noted that it is difficult for a defendant claiming the defense of privilege to the crime of felon in possession of a firearm to show that the firearm was not possessed for longer than reasonably necessary. *Coleman,* 206 Wis. 2d at 211–12 (citing *Perez,* 86 F.3d at 737; *Perrin,* 45 F.3d at 874). The same holds true for the crime of carrying a concealed weapon. Here, even in the light most favorable to the defendant—that

550

Nollie was not asleep but merely resting from an injury—any potential opportunity for him to assert a self-defense privilege had passed. To allow an individual to claim self-defense under such circumstances would essentially allow anyone walking in a "high crime neighborhood" to conceal a weapon—a situation that, again, would eviscerate the legislature's intent in making carrying a concealed weapon a crime.

## III

¶ 27.    Even viewing the facts in a light most favorable to the defendant, we hold that Nollie could not have sustained a claim of self-defense and the circuit court was correct when it refused to allow Nollie to argue self-defense at trial. For this reason, we affirm the judgment of the circuit court and sustain Nollie's conviction.

*By the Court.*—The judgment of the circuit court is affirmed.

¶ 28.    WILLIAM A. BABLITCH, J. (*dissenting*). Although the majority correctly states the test to apply in this case, *see* majority op. at ¶ 19, I conclude that the majority errs in its conclusion that Nollie failed to present sufficient evidence in this case to sustain a claim of self-defense. For this reason, I would reverse Nollie's judgment of conviction and remand for a new trial, permitting the defendant to assert a privilege of self-defense.

¶ 29.    Evidence is sufficient to support a theory of defense if "a reasonable construction of the evidence will support the defendant's theory 'viewed in the most favorable light it will "reasonably admit from the standpoint of the accused." ' " *State v. Mendoza,* 80 Wis. 2d

122, 153, 258 N.W.2d 260 (1977) (citation omitted). A reasonable construction of the evidence in this case leads to the conclusion that Nollie had an actual and reasonable belief that there was an imminent unlawful interference with his person. Nollie argued that he was forced to pull his car over while driving home at 1:30 a.m. on a Thursday morning because of a flat tire. When he got out of his car, several men were being loud and profane approximately thirty feet from his car. Having been the victim of several crimes in the same area, including a physical assault and armed robbery, Nollie removed and loaded a firearm from his trunk and placed it in the waistband of his pants.

¶ 30.   Indeed, the test is not whether the evidence showed that there was an actual or imminent unlawful interference with the defendant's person. Instead, it is based on whether the defendant had an actual and reasonable belief that there was an actual or imminent unlawful interference. In this case, in light of the defendant's past history with being a victim of a crime, of evidence showing his proximity to several individuals in a high crime area late at night, and of evidence of his vulnerability to becoming a victim of another crime, I would conclude that the defendant's belief that he may be victimized again was reasonable. Therefore, his claim of self-defense should have been permitted in this case. Accordingly, I respectfully dissent.