STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Terrell A. COLEMAN, Defendant-Appellant.

Supreme Court

*No. 95–0917–CR. Oral argument October 30, 1996.—Decided December 20, 1996.*

(Also reported in 556 N.W.2d 701.)

For the plaintiff-respondent-petitioner the cause was argued by *Sharon Ruhly*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief and oral argument by *Thomas E. Harris*, Waukesha.

N. PATRICK CROOKS, J. The State of Wisconsin seeks review of a published decision of the court of appeals,[1] which reversed a judgment of the circuit court for Milwaukee County, Judge Jeffrey A. Kremers, convicting Terrell A. Coleman of one count of felon in possession of a firearm, contrary to Wis. Stat. § 941.29(2) (1989-90).[2] Two issues are before this court. First, under what circumstances does a defense of privilege exist to a charge of felon in possession of a firearm? Second, did the circuit court commit error by

[1] *State v. Coleman*, 199 Wis. 2d 174, 544 N.W.2d 912 (Ct. App. 1996).

[2] All future references are to the 1989-90 statutes unless otherwise indicated.

denying Coleman's request to instruct the jury on privilege, and, if so, is the error harmless? We hold that a narrow defense of privilege, which originates from *United States v. Gant*, 691 F.2d 1159 (5th Cir. 1982), and *State v. Newcomb*, 6 F.3d 1129 (6th Cir. 1993), exists to a charge of felon in possession of a firearm. We further hold that the circuit court erred by refusing to instruct the jury on privilege, and that this error is not harmless. We therefore affirm the decision of the court of appeals.

## I.

The pertinent facts are not in dispute. On October 21, 1992, between 8:30 a.m. and 9:00 a.m., Terrell A. Coleman arrived at the residence of Tanisha Evans and Camille Mason to pick up his niece and nephew.[3] While Coleman was waiting in the living room for the children, he heard what he thought was kicking at the door. Coleman testified: "I thought it was somebody to come up in there and try and rob it again." (R. 25 at 3.)

Both Coleman and Evans testified that four men had robbed the residence approximately one month earlier. One of the men had put a gun to Evans' head, in the presence of her children. Coleman, who was in Mason's bedroom at the time, jumped out of the window, ran to the corner, and called the police.[4] Evans also testified that her brother purchased a rifle for her because of this incident. Evans kept the rifle in a closet in Mason's bedroom, because Evans' bedroom did not have a closet.

---

[3] Camille Mason is Coleman's girlfriend. Tanisha Evans is the mother of Coleman's niece and nephew.

[4] Both Evans and Coleman testified in a subsequent criminal trial involving this robbery.

Coleman testified that he therefore was scared when he heard the noise at the door because he thought "[s]omebody was going to rob the house again." (R. 25 at 6.) He further testified that he panicked, ran into Mason's bedroom, grabbed the rifle, went into the living room, and pointed the rifle at the door "to defend [him]self." (R. 25 at 7.) Much to Coleman's surprise, when the door opened, uniformed members of the Milwaukee County Sheriff's Tactical Squad entered the residence.

The officers were executing a "no knock" search warrant at the residence. They used a "hooligan," which is a bar-type tool, to pry open the screen door. They also breached the inner door by hitting it two to three times with a large "ram" to push it in, which took about five to six seconds. One officer testified that this process would make a noise that definitely would be heard. In addition, since the officers were executing a "no knock" search warrant, they did not announce "police—search warrant" until they had broken down the doors.

One officer testified that after they breached the doors and saw Coleman pointing the rifle at them, everyone experienced an extremely intense moment. Another officer testified that Coleman looked frightened. Within a matter of seconds, Coleman lowered the rifle, ran into Mason's room, threw the rifle onto the bed, and turned around to face the officers with his hands raised in what one officer viewed as an effort to surrender. Coleman testified that he ran into the room because he was afraid the officers were going to shoot him.

On October 22, 1992, the State filed a criminal complaint, charging Coleman with one count of felon in possession of a firearm, contrary to Wis. Stat.

§ 941.29(2).[5] A preliminary hearing was held on November 2, 1992. The circuit court concluded that probable cause existed and therefore held Coleman for trial. On the same day, the State filed an information against Coleman, again charging him with one count of felon in possession of a firearm. Coleman pled not guilty.

Following several continuances, a jury trial was held on May 31 and June 1, 1994. The parties stipulated that Coleman was a convicted felon within the meaning of § 941.29(2). Coleman also conceded at trial that he had actual possession of the rifle when the officers entered Evans' residence. Thus, the main issue at trial was whether Coleman's possession of the rifle was privileged.

Accordingly, in his opening statement, Coleman's attorney said, "[I]n this particular case it will be proven beyond a reasonable doubt that [holding the rifle] was a reasonable action that was privileged—[Coleman] was privileged to take under the law." (R. 24 at 74.) Coleman also presented evidence, through his own testimony and that of Evans, in support of his claim that his possession of the gun was privileged. In addition, Coleman asked the court to give the following pattern jury instructions: Wis JI—Criminal 790 (coercion); Wis JI—Criminal 800 (privilege: self-defense); Wis JI—Criminal 810 (privilege: self-defense: retreat); Wis JI—Criminal 825 (privilege: defense of others); Wis JI—Criminal 860 (privilege: defense of another's property). The State conceded that a defense of privilege exists to a charge of felon in possession of a firearm, but

---

[5] Section 941.29(2) provides in pertinent part: "Any person specified in sub. (1) who, subsequent to the conviction for the felony or other crime, as specified in sub. (1),. . .possesses a firearm is guilty of a Class E felony."

argued that Coleman was not entitled to such an instruction because he had not produced sufficient evidence in support of the defense of privilege.

The circuit court denied Coleman's request to instruct the jury on privilege, because he determined that Coleman had not produced sufficient evidence that the defense of privilege applied.[6] Similarly, the circuit court informed Coleman's attorney that he could not discuss self-defense in closing arguments. Immediately thereafter, Coleman's attorney moved for a mistrial. The circuit court denied the motion. Subsequently, the jury returned a verdict of guilty, and the circuit court entered a judgment of conviction. Coleman then appealed.

The court of appeals concluded that the circuit court had committed error by refusing to instruct the

---

[6] Specifically, the circuit court judge concluded:

And I will acknowledge, I'm troubled by the situation in the case and the facts, but in the final analysis, it seems to me that there has to be more than just a defendant hearing somebody kicking at the door to justify these defenses.

It seems to me that there has to be some basis for the defendant to believe that there was a threat to some threshold level on the record that has to be shown before it becomes even a jury question on those issues and I don't think on this record there is such a basis.

. . . .

I would also note that what he did in the robbery case when he heard the robbery was to jump out the window and go call the police. Seems like that would have been a, he could have done that just as easily and I don't want to be put in the position where someone says, well the judge is acting as a juror now and deciding what would have been reasonable. That is not my point.

My point is that I think there has to be some level of reserved or anticipated danger shown on the record before he is justified in using one of the defenses and I don't think that is here in this record.

(R. 25 at 39-40.)

jury on privilege. The court further held that such error is not harmless, and thus ordered a new trial.[7]

## II.

We initially consider the issue of the applicability of a defense of privilege. The parties agree that a defense of privilege exists to a charge of felon in possession of a firearm contrary to Wis. Stat. § 941.29(2). We likewise agree with this conclusion. Although § 941.29(2) is a strict liability offense, *State v. Phillips*, 172 Wis. 2d 391, 395, 493 N.W.2d 238 (Ct. App. 1992), *review denied*, 497 N.W.2d 132 (1993), this court has determined that a strict liability offense is subject to a defense of privilege. *State v. Brown*, 107 Wis. 2d 44, 53-57, 318 N.W.2d 370 (1982).[8] In addition, the applicable statute defining privilege provides: "The fact that the

---

[7] However, the court of appeals did not determine the **circumstances** under which a privilege exists to a charge of felon in possession of a firearm. Instead, the court only addressed the issue of whether Coleman had introduced sufficient evidence to entitle him to a self-defense instruction.

[8] Although *State v. Brown* involved Wis. Stat. § 346.57(4)(h), *Brown* is nonetheless applicable precedent in this case. In particular, the court held:

> We conclude that recognizing a defense of legal justification does not necessarily conflict with the concept that violation of a traffic law is a strict liability offense. The basic concept of strict liability is that culpability is not an element of the offense and that the state is relieved of the burdensome task of proving the offender's culpable state of mind. When the defendant in the case at bar claims legal justification, he is not seeking to disprove a statutorily required state of mind. Instead he is claiming that even though he knowingly violated the law, his violation was privileged under the circumstances.

*State v. Brown*, 107 Wis. 2d 44, 53, 318 N.W.2d 370 (1982). Likewise, we conclude that even though violation of § 941.29(2)

207

actor's conduct is privileged, although otherwise criminal, is a defense to a prosecution for **any crime** based on that conduct." Wis. Stat. § 939.45 (emphasis added). There is no indication that the legislature intended to supersede § 939.45 when it enacted § 941.29(2), by entirely denying a felon in possession of a firearm the defense of privilege. Accordingly, we conclude that a defense of privilege applies to § 941.29(2).

The parties, however, disagree about the scope of this privilege. Coleman argues that the statutory defenses of coercion, self-defense, defense of others, and defense of property are applicable.[9] The State, on the other hand, contends that these statutory defenses are inapplicable because they do not address the purpose underlying the offense of felon in possession of a firearm, or the strict liability aspect of the offense. Accordingly, the State asks this court to recognize a narrow defense of privilege under § 939.45(6), as defined primarily in *United States v. Gant*, 691 F.2d 1159 (5th Cir. 1982).

We therefore must determine under what circumstances a privilege exists to Wis. Stat. § 941.29(2). Although this is an issue of first impression in Wisconsin, courts in several other jurisdictions have considered whether a defense of privilege exists to a statute that prohibits a felon from possessing a firearm. These courts have overwhelmingly determined that a defense of privilege exists.[10] However, these

is a strict liability offense, it is not inconsistent to recognize the defense of privilege to it.

[9] These defenses are set forth in Wis. Stat. §§ 939.45 - 939.49.

[10] A non-exhaustive survey of case law from other jurisdictions indicates that the following jurisdictions have recognized a defense of privilege to a charge of felon in possession of a

courts have disagreed on the specific privilege that applies—coercion, necessity, duress, self-defense, or "justification" in general.[11] Yet, regardless of the title, the vast majority of courts have defined the privilege narrowly, by either requiring the defendant to satisfy a multiple-part test, or prove certain elements in addi-

firearm: *United States v. Gomez*, 92 F.3d 770 (9th Cir. 1996); *United States v. Perez*, 86 F.3d 735 (1996); *United States v. Martin*, 62 F.3d 1009 (8th Cir. 1995), *cert. denied,* — U.S. —, 116 S. Ct. 1556 (1996); *United States v. Perrin*, 45 F.3d 869 (4th Cir.), *cert. denied,* — U.S. —, 115 S. Ct. 2287 (1995); *United States v. Newcomb*, 6 F.3d 1129 (6th Cir. 1993); *United States v. Paolello*, 951 F.2d 537 (3d Cir. 1991); *United States v. Vigil*, 743 F.2d 751 (10th Cir.), *cert. denied,* 469 U.S. 1090 (1984); *United States v. Gant*, 691 F.2d 1159 (5th Cir. 1982); *Marrero v. State,* 516 So. 2d 1052 (Fla. Dist. Ct. App. 1987); *State v. Blache*, 480 So. 2d 304 (La. 1985); *State v. Castrillo*, 819 P.2d 1324 (N.M. 1991); *Conaty v. Solem*, 422 N.W.2d 102 (S.D. 1988); *see also People v. King*, 582 P.2d 1000 (Cal. 1978) (en banc) (self-defense available to charge of felon in possession of a concealable firearm); *State v. Crawford*, 521 A.2d 1193 (Md. 1987) (defense of necessity exists to charge of carrying a concealed weapon); *State v. Hardy*, 397 N.E.2d 773 (Ohio Ct. App. 1978) (self-defense available where defendant charged with having a weapon while under a disability). *But see Johnson v. State*, 650 S.W.2d 414 (Tx. Crim. App. 1983) (necessity defense not available to defendant charged with unlawfully carrying a handgun on licensed premises).

[11] *See, e.g., United States v. Gant*, 691 F.2d 1159, 1161 n.3 (5th Cir. 1982) (using common elements of duress and necessity and calling it "justification defense") *State v. Crawford*, 521 A.2d 1193, 1200-01 (Md. 1987) (necessity); *State v. Castrillo*, 819 P.2d 1324, 1328 (N.M. 1991) (duress); *Conaty v. Solem*, 422 N.W.2d 102, 104 (S.D. 1988) (self-defense).

tion to the common law elements of the applicable privilege.[12]

The State makes a compelling argument that, because of the underlying purpose of Wis. Stat. § 941.29(2), this court should also narrowly define any applicable privilege. This court has recognized that the legislative purpose behind § 941.29(2) is the protection of public safety. *State v. Thiel*, 188 Wis. 2d 695, 706-08, 524 N.W.2d 641 (1994). Specifically, § 941.29(2) is aimed at keeping firearms away from felons, because the legislature has determined that felons are more likely to misuse firearms. *Id.*

We thus conclude that a narrow defense of privilege under Wis. Stat. § 939.45(6) exists to a charge of felon in possession of a firearm. In order to be entitled to the defense, the defendant must prove: (1) the defendant was under an unlawful, present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury, or the defendant reasonably believes he or she is under such a threat;[13] (2) the defendant did not reck-

---

[12] *See, e.g., United States v. Newcomb*, 6 F.3d 1129, 1134-35 (6th Cir. 1993) (five-part test); *United States v. Gant*, 691 F.2d 1159, 1162-63 (5th Cir. 1982) (four-part test); *Marrero v. State*, 516 So. 2d 1052, 1055 (Fla. Dist. Ct. App. 1987) (five-part test); *State v. Blanche*, 480 So. 2d 304, 308 (La. 1985) (requiring defendant to prove he or she took possession of weapon for a period no longer than necessary); *State v. Castrillo*, 819 P.2d 1324, 1330-31 (N.M. 1991) (requiring defendant to prove he or she possessed a firearm for a period of time no longer than justified, and to pursue other actions, if reasonably possible, before committing the crime).

[13] Note that under the *Gant* test, the first-prong does not provide that a defendant's conduct may be privileged where the defendant **reasonably believes** he or she is under an unlaw-

lessly or negligently place himself or herself in a situation in which it was probable that he or she would be forced to possess a firearm; (3) the defendant had no reasonable, legal alternative to possessing a firearm, or reasonably believed that he or she had no such alternative; in other words, the defendant did not have a chance to refuse to possess the firearm and also to avoid the threatened harm, or reasonably believed that he or she did not have such a chance; (4) a direct causal relationship may be reasonably anticipated between possessing the firearm and the avoidance of the threatened harm; (5) the defendant did not possess the firearm for any longer than reasonably necessary. *See Gant*, 691 F.2d at 1162-63, 1163 n.9; *United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir.), *cert. denied*, 498 U.S. 872 (1990); *Newcomb*, 6 F.3d at 1134-35.[14] We

---

ful, present, imminent, and impending threat. *United States v. Gant*, 691 F.2d 1159, 1162 (5th Cir. 1982) However, several state courts have determined that a privilege exists under such circumstances. *People v. King*, 582 P.2d 1000, 1007 (Cal. 1978); *Marrero v. State*, 516 So. 2d 1052, 1055 (Fla. Dist. Ct. App. 1987); *State v. Blache*, 480 So. 2d 304, 308 (La. 1985); *State v. Crawford*, 521 A.2d 1193, 1200 (Md. 1987). We are persuaded by the decisions of these courts, and therefore have incorporated this into the five-part test that we are adopting.

[14] In *United States v. Gant*, the court set forth a four-part test, and also indicated in a footnote that a defendant's "continued possession beyond the time that the emergency exists will defeat the defenses." 691 F.2d 1159, 1163 n.9 (5th Cir. 1982). The court in *United States v. Singleton* adopted the *Gant* four-part test, and likewise indicated that "[c]orollary to the requirement that the defendant have no alternative to possession of the firearm is the requirement that the defendant get rid of the firearm as soon as a safe opportunity arises." 902 F.2d 471, 473 (6th Cir.), *cert. denied*, 498 U.S. 872 (1990). In *United States v. Newcomb*, the court combined the *Gant* four-part test with the

emphasize that a defendant will be able to establish these elements "only on the rarest of occasions," because of the difficulty in proving that he or she did not have a reasonable legal alternative to violating the law, and that he or she possessed the firearm for a period of time no longer than reasonably necessary.[15] *See Perez*, 86 F.3d at 737; *Perrin*, 45 F.3d at 874 (citing *Singleton*, 902 F.2d at 472).

## III.

We next turn to the issue of whether the circuit court erred in not giving Coleman's requested instructions, and, if so, whether such error is harmless. A circuit court has broad discretion in deciding whether to give a requested jury instruction. *E.g.*, *State v. Vick*, 104 Wis. 2d 678, 690, 312 N.W.2d 489 (1981). However, a circuit court must exercise its discretion in order "to fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." *Id.* (quoting *State v. Dix*, 86 Wis. 2d 474, 273 N.W.2d 250 (1979)). In addition, a criminal defendant is entitled to a jury instruction on a theory of defense if: (1) the defense relates to a legal theory of a defense, as opposed to an interpretation of evidence, *State v. Davidson*, 44 Wis. 2d 177, 191-92, 170 N.W.2d 755 (1969); (2) the request is timely made, *Turner v. State*, 64 Wis. 2d 45, 51-52, 218 N.W.2d 502 (1974); (3) the defense is not ade-

---

additional requirement set forth by the courts in *Gant* and *Singleton*, resulting in a five-part test. 6 F.3d 1129, 1134-35 (6th Cir. 1993).

[15] For example, such a rare occasion would occur where a felon is attacked and wrestles a weapon away from his attacker. *E.g.*, *State v. Castrillo*, 819 P.2d 1324, 1329 (N.M. 1991).

quately covered by other instructions, *Johnson v. State*, 75 Wis. 2d 344, 367-68, 249 N.W.2d 593 (1976); *Davidson*, 44 Wis. 2d at 192; and (4) the defense is supported by sufficient evidence, *Johnson v. State*, 85 Wis. 22, 28-29, 270 N.W.2d 153 (1978); *Turner*, 64 Wis. 2d at 51-52.

 In the present case, the parties only dispute whether Coleman presented sufficient evidence in support of the defense of privilege.[16] Evidence is sufficient if "a reasonable construction of the evidence will support the defendant's theory 'viewed in the most favorable light it will reasonably admit from the standpoint of the accused.' " *State v. Mendoza*, 80 Wis. 2d 122, 153, 258 N.W.2d 260 (1977) (quoting *Ross v. State*, 61 Wis. 2d 160, 172-73, 211 N.W.2d 827 (1973)). In making this determination:

> [N]either the trial court nor this court may, under the law, look to the "totality" of the evidence. . .in determining whether the instruction was warranted. To do so would require the court to weigh the evidence—accepting one version of facts, rejecting another—and thus invade the province of the jury. . . .

*Mendoza*, 80 Wis. 2d at 153; *accord State v. Jones*, 147 Wis. 2d 806, 816, 434 N.W.2d 380 (1989). Thus, neither the trial court nor the reviewing court may weigh the

---

[16] Coleman clearly met the additional three requirements First, the defense of privilege is a legal theory of defense. Wis JI—Criminal 700 (Law Note: Theory of Defense Instructions). Second, Coleman requested the instructions on May 31, 1994, one day before the instructions conference, which was timely. Third, no other instructions adequately covered Coleman's theory of the defense, because the circuit court judge refused to give any instructions on privilege.

evidence, but instead may only ask whether a reasonable construction of the evidence, viewed favorably to the defendant, supports the alleged defense. *Mendoza*, 80 Wis. 2d at 154; *Jones*, 147 Wis. 2d at 816. "If this question is answered affirmatively, then it is for the jury, not the trial court or this court, to determine whether to believe defendant's version of the events." *Mendoza*, 80 Wis. 2d at 154; *Jones*, 147 Wis. 2d at 816.

Furthermore, although we have repeatedly indicated that the defendant bears the burden of producing sufficient evidence, we have also determined that the source of such evidence may be facts produced by the defense or by the state. *State v. Felton*, 110 Wis. 2d 485, 508, 329 N.W.2d 161 (1983). Thus, the evidence may be facts affirmatively presented by the state, facts elicited from the state's witnesses through cross-examination, or evidence affirmatively presented by the defense. *Id.*; Wis JI—Criminal 700 (Law Note: Theory of Defense Instruction).

In the present case, we conclude that Coleman presented sufficient evidence in support of the defense of privilege. The evidence was sufficient because the jury, in reasonably construing the evidence, could have determined that Coleman had satisfied the five-part test. First, a reasonable jury could find that Coleman reasonably believed he was under an unlawful, present, imminent, and impending threat of being robbed, based on his testimony that he thought someone was kicking the door, and based on Coleman and Evans' testimony regarding the prior robbery. Second, a reasonable jury could find that Coleman did not recklessly or negligently place himself in a situation in which it was probable he would be forced to choose criminal conduct, since he testified that he was at the residence

to pick up his niece and nephew. Third, a jury could find that Coleman reasonably believed that he had no reasonable, legal alternative to violating the law, because a jury could find that he made a split-second decision to grab the rifle when he heard the noise. Fourth, a reasonable jury could find that there was a direct causal relationship between Coleman possessing the weapon and the robbery which he testified that he thought was occurring. Fifth, a reasonable jury could find that Coleman did not possess the gun any longer than absolutely necessary, since he testified that he grabbed the rifle when he heard the noise, and evidence established that he dropped it a few seconds after the officers breached the doors.

Therefore, because Coleman presented sufficient evidence in support of the defense of privilege, the court committed error by refusing to give a theory of defense instruction. *See* Wis JI—Criminal 700; *Davidson*, 44 Wis. 2d at 191-92. We note, however, that the instructions requested by Coleman—coercion, self-defense, defense of others, and defense of property—are substantively different than the five-part test we have adopted here today. Nonetheless, the circuit court committed error by refusing to give **any** instruction on Coleman's theory of the defense.

Since we have determined that the circuit court committed error, we must therefore consider whether such error is harmless. An error is harmless if there is no reasonable possibility that the error contributed to the conviction. *E.g., State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). If a reasonable possibility exists that the error contributed to the conviction, the reviewing court must reverse the conviction and order

a new trial. *Id.* We have indicated: "It can be prejudicial error for a trial judge to fail to instruct on a special defense if the evidence raises that issue." *Davidson*, 44 Wis. 2d at 192.

We conclude that a reasonable possibility exists that the error contributed to the conviction. If the jury had been properly instructed as to Coleman's theory of the defense, the jury reasonably could have found that Coleman's brief possession of the firearm was privileged under the circumstances, and therefore they may not have returned a guilty verdict. Thus, the error committed by the circuit court is not harmless.[17]

In summary, we hold that a narrow defense of privilege exists to a charge of felon in possession of a firearm. In order to be entitled to the defense, a defendant must satisfy the five-part test that we have adopted. In the present case, Coleman presented sufficient evidence that the defense of privilege is applicable, because a reasonable construction of the evidence supports Coleman's theory of defense. Therefore, the circuit court erred by not instructing the jury on privilege. Moreover, such error is not harmless, because there is a reasonable possibility that the error contributed to Coleman's conviction. Accordingly, the conviction must be reversed, and a new trial ordered.

*By the Court.*—The decision of the court of appeals is affirmed.

[17] Coleman also raises a claim of ineffective assistance of counsel. Since we have reversed the conviction on the jury instruction issue, we need not reach this claim.