PER CURIAM.
¶ 1 Brittney R. Dixon appeals from a judgment convicting her on two counts of homicide by operating a vehicle while having a controlled substance in her blood and one count of bail jumping and from an order denying her postconviction motion. The primary issue is whether the circuit court erred by refusing to instruct the jury about the affirmative defense to the homicide charges under WIS. STAT. § 940.09(2)(a) (2015-16),[1] which applies if it is proven the deaths would have occurred even if Dixon had exercised due care and had no controlled substances in her blood. Dixon failed to produce sufficient evidence-even assuming her account of the accident was true-showing the deaths would have occurred had she driven free of negligence and drugs, and she therefore was not entitled to the jury instruction on the affirmative defense. She also contends there was an evidentiary issue warranting reversal. We affirm.
BACKGROUND
¶ 2 The case arises out of a vehicle-pedestrian accident, resulting in the deaths of Norman Brummel and Estefania Martinez. Dixon was driving, Martinez was a passenger, and Brummel was a pedestrian. Most of the facts are undisputed. The few material disputes will be noted.
¶ 3 On August 7, 2015, Kenneth Heckert helped his friend, Brummel, load a trailer. Heckert then went home. Later that morning, Heckert saw Brummel drive by and pull his truck and trailer over on the shoulder of the westbound side of Highway 11. Heckert followed and parked his vehicle about twenty feet behind Brummel's trailer and to the right of the fog line.
¶ 4 Brummel exited and walked toward the back of his truck. According to Heckert, Brummel was walking on the edge of the road, even with the fog line, alongside his vehicle. Heckert saw Brummel raise his hands and "kind of turned a little," indicating alarm.
¶ 5 Still in his vehicle, Heckert recalled a blue car rapidly passing by, heading west. There was enough space, Heckert believed, between his vehicle and the blue car for Heckert to safely open his door. Heckert thought the blue car "came in on an angle," striking Brummel as he was behind his trailer. "Maybe another step further and [the accident] wouldn't have happened," Heckert testified. He did not recall seeing oncoming traffic in the eastbound lane.
¶ 6 Dixon testified that, earlier that morning around 2:00 a.m., she and Martinez, a friend, used cocaine and then marijuana. They went to bed around 3:30 a.m. Martinez had to be at work at 11:00 a.m. Running late, Dixon drove Martinez to work, traveling on Highway 11. Dixon testified that she felt no effects from her earlier use of drugs. She thought she was going about fifty-five miles per hour, which was five over the posted limit. She saw a trailer up ahead, but no people. Noticing an ash fall from her cigarette, Dixon looked down and then at the car clock. Martinez suddenly yelled her name. Dixon recalls looking up and seeing Brummel on her right and oncoming traffic on her left. She remembers striking him, but did not notice him raise his hands. She denies crossing the fog line before hitting him, but acknowledges he was not in the middle of her lane. She estimates about two seconds passed between looking down at the ash and looking back up to see Brummel.
¶ 7 Officer Anthony Ambach, an accident reconstructionist, responded to the crash. He noted the entire paved width of Highway 11 at that spot was thirty feet, consisting of two twelve-foot wide travel lanes and two three-foot wide shoulders.
¶ 8 Ambach testified that, at the time of the crash, the driver-side back tires of Brummel's truck and his trailer were partly on and partly over the fog line, inching onto the travel lane of the highway. Ambach opined that Dixon's car was eight inches over the fog line when its right front struck the left rear of Brummel's trailer. Dixon's car pushed Brummel into the trailer.
¶ 9 Ambach testified that Heckert's observations about seeing the car angle in at a high speed were consistent with his forensic analysis, which was based on measurements, photographs, weights, and other information. Ambach described the angle as "slight." Ambach opined Dixon had sufficient room in her own twelve-foot wide lane to pass without striking Brummel's trailer.
¶ 10 Ambach calculated Dixon's speed at 61.41 miles per hour. He opined that, had Dixon been traveling at the posted limit of fifty, Brummel would have had time to step to the side and avoid the accident. Ambach believed that Brummel's truck and trailer could be readily seen from 500 feet away. At sixty miles per hour, traveling 500 feet would have taken Dixon five and one-half seconds. Because it was daytime, Ambach did not believe the use of hazard lights would have made a difference for the visibility of Brummel's truck and trailer.
¶ 11 Dixon's blood tested positive for cocaine and cannabinoids (marijuana). A toxicologist testified that the test results indicated Dixon ingested the cocaine between 5:00 a.m. and 11:00 a.m. It was possible, she believed, that Dixon could have ingested cocaine before 5:00 a.m., but the amount ingested would have been significant and such a time frame was inconsistent with the test results.
¶ 12 The State charged Dixon with two counts of homicide for causing the deaths of Brummel and Martinez by operation of a vehicle while having a detectable amount of a controlled substance in her blood. WIS. STAT. § 940.09. It also charged her with felony bail jumping, which was based on violations of her bond conditions for a July 10, 2015 conviction for obstructing a law enforcement officer. The obstruction offense arose out of her lying to police about the whereabouts of her husband. It was Dixon's only criminal conviction.
¶ 13 Before the June 2016 trial, the State moved in limine for permission to impeach Dixon, if she chose to testify, with evidence related to her conviction. In particular, the State sought to impeach Dixon with the fact of the conviction itself under WIS. STAT. § 906.09 as well as with the specific instances of conduct-lying to police-that formed the basis for the conviction under WIS. STAT. § 906.08(2). After learning during trial that Dixon would testify, the court granted the motion.
¶ 14 At the close of evidence, Dixon requested the jury be instructed about the affirmative defense to the homicide charges under WIS. STAT. § 940.09(2)(a). The defense applies when the defendant has shown that the death would have occurred even if the defendant had exercised due care and had no controlled substance in his or her blood. Id. The circuit court denied Dixon's request, concluding she had not met her burden of proof. The jury found Dixon guilty on all counts.
¶ 15 Dixon moved for postconviction relief.[2] She argued the court should have instructed the jury on the affirmative defense. Dixon also argued the court erred when it allowed the State to impeach her with evidence of the conduct underlying her conviction for obstructing an officer. The court denied the motion, and Dixon appeals.
DISCUSSION
¶ 16 The circuit court has broad discretion when it decides whether to give a requested jury instruction, State v. Stietz , 2017 WI 58, ¶ 12, 375 Wis. 2d 572, 895 N.W.2d 796, but, upon a timely request, the court should instruct the jury of an affirmative defense if it is sufficiently supported by the evidence, State v. Coleman , 206 Wis. 2d 199, 212-13, 556 N.W.2d 701 (1996). The burden of producing that evidence is with the defendant. Id. at 214. In assessing whether the evidence is sufficient, the court asks "whether a reasonable construction of the evidence, viewed favorably to the defendant, supports the alleged defense." Id. It is insufficient if the defendant offers evidence that is "only speculative" and indirect. See State v. Caibaiosai , 122 Wis. 2d 587, 600, 363 N.W.2d 574 (1985). Whether the evidence warrants an instruction on a defense is a question of law, which we review de novo, but we benefit from the circuit court's analysis. Stietz , 375 Wis. 2d 572, ¶ 14.
¶ 17 The homicide by vehicle charge here has three basic elements: (1) causing the death of another (2) by operation of a vehicle (3) while having a restricted controlled substance in the blood. WIS. STAT. § 940.09(1)(am). No causal connection need be proven between the death and the influence of the drug; the required connection is between the death and the operation of the vehicle. State v. Heft , 185 Wis. 2d 288, 296-97, 517 N.W.2d 494 (1994). In this way, it is akin to a strict liability offense. State v. Raczka , 2018 WI App 3, ¶ 8, 379 Wis. 2d 720, 906 N.W.2d 722.
¶ 18 Dixon does not dispute the State proved the elements of the offense. She asserts, instead, that she was entitled to have the jury instructed on the affirmative defense to the offense, which is "a separate issue from the elements the state must prove and one which requires proof by preponderance of the evidence." Heft , 185 Wis. 2d at 297. The affirmative defense provides as follows: "[T]he defendant has a defense if he or she proves by a preponderance of the evidence that the death would have occurred even if he or she had been exercising due care and he or she ... did not have a detectable amount of a restricted controlled substance in his or her blood." WIS. STAT. § 940.09(2)(a). It has been described as "a defense for the situation where there is an intervening cause" that breaks the causal connection between the operation of the vehicle and the death. State v. Turk , 154 Wis. 2d 294, 296, 453 N.W.2d 163 (Ct. App. 1990) (citation omitted). The victim's own conduct may be relevant as "situations can arise where, because of the victim's conduct, an accident would have been unavoidable even if the defendant had been driving with due care and had not been under the influence." State v. Lohmeier , 205 Wis. 2d 183, 195, 556 N.W.2d 90 (1996).
¶ 19 Dixon argues the jury should have been instructed on the defense because Martinez's and Brummel's deaths "might not have happened had Brummel and his trailer been a couple feet further off of the roadway." She also points out Brummel did not use warning flashers or markers. Because the placement of the trailer was unexpected and could have surprised any driver approaching the area, Dixon asserts it was for the jury to decide whether she proved her defense. We disagree.
¶ 20 Dixon failed to provide sufficient evidence to show an intervening cause. Dixon does not dispute the truck and trailer were visible from 500 feet away nor that she would have been able to see them for over five seconds had she not been looking down, even at sixty miles per hour. Although she implies Brummel was in front of the fog line and in her lane of travel, she does not contend that his location hindered or precluded her ability to drive by safely within her twelve-foot-wide lane of travel had she simply maintained a proper lookout, a point specifically made by Ambach. Based on these undisputed circumstances, if Dixon had been exercising due care in the operation of her vehicle, no reasonable jury could conclude the crash would have nonetheless occurred. She failed to produce sufficient evidence that there was an intervening cause between her operation of her car and the resulting deaths. See Lohmeier , 205 Wis. 2d at 195 n.9 (providing the example of the victim suddenly "darting out" into the roadway, making the collision unavoidable even when the driver exercises due care). We reach this conclusion even assuming, for the sake of argument, her account of the accident was true: Brummel was located slightly in front of the fog line, she was traveling at fifty-five, and she felt no effects of drug use.[3] Because she failed to produce sufficient evidence to support her defense, the circuit court did not err in refusing to give the instruction.
¶ 21 Dixon also asserts error occurred when the circuit court allowed the State to attack her character for truthfulness with details of her prior conviction for obstruction of justice under WIS. STAT. § 906.08(2), after the fact of that conviction had already been admitted under WIS. STAT. § 906.09. However, we need not reach that issue because, given our determination the evidence was insufficient to warrant the instruction on the defense, any error in allowing details of her prior conviction was harmless. An error is harmless if it does not affect the substantial rights of a defendant. WIS. STAT. § 805.18(1). "An error does not affect the substantial rights of a defendant if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." State v. Head , 2002 WI 99 ¶ 44, 255 Wis. 2d 194, 648 N.W.2d 413. An error affects a party's substantial rights only if there is a reasonable possibility that the error contributed to the conviction. See State v. Dyess , 124 Wis. 2d 525, 542-43, 370 N.W.2d 222 (1985).
¶ 22 Dixon argues admission of both the conviction itself and its underlying details tagged her as a "liar" and went beyond the normal bounds of impeachment. But the point of Dixon's testimony was to establish a basis to have the jury instructed on the affirmative defense. As discussed above, we have concluded that, even assuming Dixon's testimony was true, the evidence was insufficient and the court's refusal to give the instruction was not error. Therefore, even if we assume without deciding that the details of her prior conviction were erroneously admitted, there is no reasonable possibility this information contributed to her conviction in this case.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The Honorable James L. Carlson presided over the pretrial, trial, and sentencing phases of Dixon's case. The Honorable Phillip A. Koss presided over Dixon's postconviction motion.

Indeed, if we assume Dixon's speed, as she estimates, was fifty-five miles per hour, traveling 500 feet would have taken more than six seconds (as opposed to five and one-half seconds at sixty miles per hour), giving Dixon even more time to spot Brummel, drive accordingly, and avoid a collision.