COURT OF APPEALS
DECISION
DATED AND FILED

May 1, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP50-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF3087

**IN COURT OF APPEALS**
**DISTRICT IV**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MARCUS T. HAMILTON, JR.,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Dane County: ELLEN K. BERZ, Judge. *Affirmed*.

Before Kloppenburg, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Marcus Hamilton appeals a judgment of conviction for first-degree reckless homicide, four counts of first-degree recklessly

endangering safety, and felony bail jumping. Hamilton contends that the circuit court erred at trial by: (1) denying Hamilton's request for a self-defense instruction; and (2) denying Hamilton's motion to admit other acts evidence concerning one of the victims that Hamilton argues would have supported his self-defense claim. For the reasons in this opinion, we reject Hamilton's arguments and affirm.

*Background*

¶2 Hamilton was charged with first-degree reckless homicide, four counts of attempted armed robbery, four counts of first-degree recklessly endangering safety, and felony bail jumping. According to the criminal complaint, A.B.[1] and several friends had arranged to meet with Hamilton to purchase drugs from him. A.B. and his friends arrived in a car that A.B. was driving, and Hamilton entered the back seat. Hamilton removed a gun from his backpack and demanded that the occupants of the car give him their money and possessions. One of A.B.'s friends, C.D., told Hamilton that they would not give him anything, and Hamilton "pistol-whipped" C.D. in the face. C.D. then kicked Hamilton in the face, causing him to fall out of the car. A.B. started driving away, and Hamilton fired two shots into the car. One of the bullets struck A.B. in the back, killing him.

¶3 Prior to trial, Hamilton moved the circuit court to admit other acts evidence that A.B. had previously stolen from another individual during a prior arranged drug sale by A.B. Hamilton asserted that the other acts evidence was offered to show A.B.'s motive and intent to rob Hamilton during this arranged drug

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2023-24), we refer to the victims by initials that do not correspond to their actual names. Although homicide victims are excluded from the confidentiality rule, *see* RULE 809.86(4), we do the same for the homicide victim in this case.

All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

deal, and that it was relevant to show that Hamilton was the victim, rather than the perpetrator, of an attempted robbery leading up to the shooting. At a pretrial hearing, the court determined that the other acts evidence was offered for a permissible purpose to show A.B.'s intent to rob Hamilton. The court also determined that the evidence was relevant to the defense theory that Hamilton was the victim rather than perpetrator of an attempted robbery, and that the probative value of the other acts evidence was not outweighed by the danger of unfair prejudice.

¶4 At trial, the State presented testimony that A.B., C.D., and three other friends drove to an arranged location to meet Hamilton in order to purchase drugs from Hamilton. The four surviving occupants of the car testified that the following occurred upon their arrival. Hamilton got in the backseat of A.B.'s car. C.D. asked Hamilton about trading drugs that A.B. had in exchange for other drugs from Hamilton, which differed from the prearranged drug deal that the car occupants would purchase drugs from Hamilton. Hamilton then pulled a gun out of his backpack and demanded that the car occupants give Hamilton their money and other possessions. C.D. told Hamilton that he was not getting anything from them, and Hamilton struck C.D. in the face with the gun. C.D. kicked Hamilton in the face, causing him to fall out of the car. Hamilton then fired two shots into the car while A.B. was driving away, striking A.B. in his back. The medical examiner testified that A.B. died from a gunshot wound to his back.

¶5 C.D. also testified that he had previously purchased drugs from Hamilton, including a purchase of "lean," the slang name for a drink containing codeine and cough syrup, that turned out to be "fake as crap." Another occupant of the car testified that she did not think that Hamilton was attempting to rob them, but that he was only trying to get the money that they had agreed upon for the drug sale.

3

Hamilton elicited testimony that one of the occupants of the car told a detective that "[a]n altercation happened and then, well, there was a weapon drawn." Hamilton also introduced evidence that C.D. told a defense investigator that Hamilton was "half in and half out" of the car at the time Hamilton fired the gun into the car.

¶6 During trial and outside of the presence of the jury, defense counsel reiterated to the circuit court that Hamilton intended to introduce other acts evidence that A.B. had committed a robbery during a prior drug deal with another individual. The court determined that, based on the trial evidence up to that point, such other acts evidence would be inadmissible as irrelevant because there had been no evidence that Hamilton was being robbed by any of the car occupants on the day of the shooting. The court stated that it would reconsider allowing the other acts evidence if it became relevant.

¶7 Later in the trial, the circuit court explained to the parties that the other acts evidence that Hamilton had requested to introduce concerning A.B. robbing another individual during a prior drug deal would only be relevant if Hamilton first introduced evidence that he had acted in self-defense. Hamilton argued that the evidence was admissible to show that it was A.B. who had attempted to rob Hamilton, rather than the other way around, on the day of the shooting. The court reiterated that there had been no evidence thus far to support a defense theory that A.B. and the other occupants in the car had attempted to rob Hamilton.

¶8 After the State rested, Hamilton called two witnesses in the defense's case. First, Hamilton called the State's detective adversely. Second, he called a defense investigator. Hamilton did not testify.

¶9 After the close of evidence, Hamilton requested that the circuit court include a self-defense instruction in the court's instructions to the jury. Hamilton

argued that the evidence was sufficient for a jury to find that he had fired the gun that killed A.B. in self-defense. Hamilton argued that the following evidence met the threshold for a self-defense instruction: (1) the testimony by one of the occupants of the car that "[a]n altercation happened and then, well, there was a weapon drawn"; and (2) evidence that Hamilton was kicked in the face and pushed out of a moving car. The State objected to the self-defense instruction, arguing that the evidence at trial did not support the instruction. The court determined that the evidence did not meet the threshold to support a self-defense instruction and denied Hamilton's request.

¶10    As noted, the jury found Hamilton guilty of first-degree reckless homicide and four counts of first-degree recklessly endangering safety, and not guilty of the attempted armed robbery charges. The circuit court found Hamilton guilty of felony bail jumping.[2] The court sentenced Hamilton to a total of forty years of imprisonment, consisting of twenty years of initial confinement and twenty years of extended supervision. Hamilton appeals.

*Standard of Review*

¶11    "A circuit court has broad discretion in deciding whether to give a requested jury instruction." *State v. Coleman*, 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996). However, whether a defendant was entitled to a self-defense instruction based on the trial evidence is a question of law that we review de novo. *State v. Peters*, 2002 WI App 243, ¶12, 258 Wis. 2d 148, 653 N.W.2d 300.

---

[2] The felony bail jumping count was tried to the circuit court.

¶12    We review a circuit court's decision whether to admit other acts evidence for an erroneous exercise of discretion.[3] *State v. Hunt*, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771.  We will uphold a court's exercise of discretion if the court "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach."  *Id.*  We will look for reasons to sustain the court's discretionary decision.  *Id.*

*Discussion*

¶13    Hamilton argues that the circuit court erred by denying his request for a self-defense instruction.  "A jury must be instructed on self-defense when a reasonable jury could find that a prudent person in the position of the defendant under the circumstances existing at the time of the incident could believe that [the defendant] was exercising the privilege of self-defense."  *State v. Stietz*, 2017 WI 58, ¶15, 375 Wis. 2d 572, 895 N.W.2d 796.  This threshold requirement is "a low

---

[3] In his initial brief on appeal, Hamilton argues that our review of the circuit court's exclusion of the other acts evidence is de novo because the court denied Hamilton his constitutional right to present a defense.  *See State v. St. George*, 2002 WI 50, ¶¶14-16, 252 Wis. 2d 499, 643 N.W.2d 777 (explaining that, in some circumstances, the exclusion of evidence may implicate a defendant's constitutional right to present a defense).  In response, the State contends that Hamilton forfeited this argument because, in the circuit court, he made only a passing reference to a constitutional right to present a defense and therefore failed to sufficiently raise that claim.  *See State v. Ndina*, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612 (explaining that "[t]he forfeiture rule … gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection").  In his reply brief, Hamilton does not dispute that he forfeited his constitutional claim by failing to sufficiently raise it in the circuit court.  Therefore, we conclude that Hamilton has conceded that he forfeited his constitutional claim because he did not sufficiently raise this claim in the circuit court.  *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

Moreover, our supreme court has explained that claims concerning the admissibility of other acts evidence are "almost always properly reviewed for an erroneous exercise of discretion" and "will only rarely contain a constitutional dimension."  *State v. Johnson*, 2021 WI 61, ¶33, 397 Wis. 2d 633, 961 N.W.2d 18.  We see no reason to depart from this longstanding appellate rule in this case.

bar which only requires the accused to produce some evidence to support the proposed instruction." ***State v. Johnson***, 2021 WI 61, ¶17, 397 Wis. 2d 633, 961 N.W.2d 18. The defendant meets this threshold "even if the evidence is 'weak, insufficient, inconsistent, or of doubtful credibility.'" ***Id.*** (quoted source omitted). In assessing if "some evidence" has been presented to support the instruction, the evidence must be viewed in the light most favorable to the defendant. ***Id.***

¶14 Under WIS. STAT. § 939.48(1):

> A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

¶15 Thus, to be entitled to a self-defense instruction, Hamilton was required to make "an objective threshold showing that (1) he reasonably believed he was preventing or terminating an unlawful interference with his person, and (2) he intentionally used only the force he reasonably believed was necessary to terminate that interference." *See **Johnson***, 397 Wis. 2d 633, ¶20. Additionally, because Hamilton intentionally used force intended or likely to cause great bodily harm or death, Hamilton was required to show that he reasonably believed the force he used was necessary to prevent great bodily harm or imminent death to himself. *See* WIS. STAT. § 939.48(1). Stated another way, we must determine if "some evidence was presented from which a jury could find that [Hamilton] reasonably believed he was preventing [A.B. and his friends] from harming him without lawful authority to do so" by shooting into the car they occupied. *See **Johnson***, 397 Wis.

7

2d 633, ¶22 (quoted source omitted). If some evidence from which a jury could make that finding was presented, the circuit court was required to instruct the jury on self-defense. *See id.*, ¶21.

¶16 Hamilton argues that the jury could have found, based on the trial evidence, that Hamilton reasonably believed that he was in danger of being dragged by the car, run over, or shot by the occupants in the car and therefore needed to fire the gun into the car to prevent that interference with his person. Hamilton asserts that the jury could have reached this conclusion because of evidence that A.B. and the other car occupants attempted to rob Hamilton. In support of this assertion, Hamilton points to: (1) testimony that A.B. and the other occupants of the car tried to change the terms of the arranged drug deal once Hamilton entered the car to include trading drugs they brought for some drugs from Hamilton, rather than just purchasing drugs as previously arranged; (2) testimony that one of the occupants of the car told a detective that "[a]n altercation happened and then, well, there was a weapon drawn"; (3) testimony by one occupant in the car that she did not believe that Hamilton was trying to rob them; (4) testimony that the police did not recover any money from the occupants of the car, which Hamilton argues would suggest that they may not have brought any money to the arranged drug deal; and (5) testimony that Hamilton had previously sold fake "lean" to C.D. Hamilton argues that this evidence supports his contention that he fired the gun to prevent an interference with his person after he was kicked in the face and pushed out of a moving car, and while he was half in and half out of the car as it was moving away from him.

¶17 Viewing the evidence in the light most favorable to Hamilton, as we must, we conclude that no jury could have found that Hamilton reasonably believed that deadly force was necessary to prevent an unlawful interference with his person

at the time he fired the gun into the car. In other words, the evidence cited by Hamilton does not support his assertion that he reasonably feared that he was in danger of being dragged by the car, run over by the car, or shot. Rather, Hamilton cites evidence that, at the time he fired the gun, he was falling out of the car that was moving away from him. Hamilton cites no evidence that, in kicking Hamilton out of the car that was moving away from Hamilton, the occupants of the car made any attempt to hold on to Hamilton to further harm him or to drive the car over him. He also fails to cite any evidence to support a reasonable belief that any occupant of the car possessed or displayed a gun or other weapon before or after he was kicked out of the car. In sum, Hamilton has not identified "some evidence" that supports his assertion that he reasonably believed that he needed to use deadly force to prevent or terminate an unlawful interference with his person at the time he fired the gun. Therefore, he fails to show that the circuit court erred in denying his request for a self-defense instruction.

¶18     Next, Hamilton argues that the circuit court erroneously exercised its discretion by excluding other acts evidence that A.B. had previously robbed someone else during an arranged drug deal. Whether to admit other acts evidence requires a court to address: (1) whether the evidence is offered for a proper purpose, such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; (2) whether the evidence is relevant under WIS. STAT. § 904.01; and (3) whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). Here, the circuit court determined that the other acts evidence of A.B.'s alleged prior robbery during a drug deal with another individual was not relevant because the evidence that had been presented at trial was insufficient to support Hamilton's self-defense theory. The

9

court explained that, in the absence of evidence to support the self-defense theory, the other acts evidence was "pure character evidence."

¶19    To meet the relevancy standard under WIS. STAT. § 904.01, the other acts evidence must relate to some fact that is of consequence to the determination of this action, and it must have some tendency to make that fact more or less probable than it would be without the evidence. *Id.* at 772. Hamilton argues that the evidence that A.B. had allegedly previously robbed someone else during a drug deal made it more likely that A.B. and the other occupants of the car were attempting to rob Hamilton at the time of the drug deal, which he argues would have supported his self-defense theory. However, as explained, we conclude that the circuit court properly denied Hamilton's request for a self-defense instruction because, based on the trial evidence, no jury could have found that Hamilton reasonably believed that deadly force was necessary to prevent or terminate an interference with his person as he was falling out of the car that was moving away from him. Because Hamilton was not entitled to a self-defense instruction, the proposed other acts evidence that A.B. had previously robbed someone else during a drug deal did not relate to any fact of consequence to this action.

¶20    We conclude that the circuit court properly exercised its discretion by determining that the other acts evidence that A.B. had allegedly previously robbed another person during a drug deal was not relevant because Hamilton was not entitled to a self-defense instruction for the reasons previously discussed. Additionally, because the other acts evidence lacked probative value, the court properly found that it was "pure character evidence" and that its probative value was

therefore substantially outweighed by the danger of unfair prejudice.[4]  Accordingly, the court properly exercised its discretion by denying the admission of the other acts evidence.  We affirm.

*By the Court*.—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] To the extent that the circuit court's reasoning differed from this analysis, we note that we are required to "'look for reasons to sustain a trial court's discretionary decision.'" ***Johnson***, 397 Wis. 2d 633, ¶34 (quoted source omitted).  Thus, we may affirm the circuit court's decision for reasons other than those stated by the court.  *See* ***State v. Hunt***, 2003 WI 81, ¶52, 263 Wis. 2d 1, 666 N.W.2d 771.