# COURT OF APPEALS
# DECISION
# DATED AND FILED

## July 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2149-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF431

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MICHAEL J. FOSTER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Jefferson County: WILLIAM F. HUE and ROBERT F. DEHRING, Judges. *Affirmed.*

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

¶1 FITZPATRICK, P.J. Michael Foster appeals a judgment of conviction and an order of the Jefferson County Circuit Court denying his request

for postconviction relief.[1]  Foster was convicted of resisting an officer causing substantial bodily harm contrary to WIS. STAT. § 946.41(2r) (2019-20).[2]  Foster filed a postconviction motion for a new trial, alleging that his trial counsel provided constitutionally ineffective assistance by failing to request a jury instruction regarding the defense raised at trial that the officer used excessive force during the officer's interaction with Foster.  The circuit court denied Foster's motion.  We affirm the ruling of the circuit court.  Foster's assertion that his trial counsel was ineffective fails because he has not provided to this court: (1) material instructional language that trial counsel purportedly should have requested; and (2) a developed argument articulating a basis, through reliance on applicable authorities, for such an instruction.

## BACKGROUND

¶2      There is no dispute regarding the following material facts.

¶3      Foster was arrested and taken to the Watertown Police Department to complete the booking process.[3]  During that process, Foster briefly left the booking room to use the restroom.  When he returned, the arresting officer[4] noticed that Foster was carrying a wallet.  The officer requested that Foster hand

---

[1] The Honorable William F. Hue presided at the trial in this action and entered the judgment of conviction.  The Honorable Robert F. Dehring denied Foster's postconviction motion.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] The reason for Foster's arrest is not consequential to the issues before this court.

[4] We refer to the injured officer as "the arresting officer" or "the officer," rather than by name, because he is the victim of a crime.  *See* WIS. STAT. RULE 809.86(4).

over the wallet, but Foster refused. The officer called for back-up assistance from other officers. Before other officers arrived, the officer attempted to take the wallet from Foster, and the officer testified as to his perception that Foster was physically confronting him. During the process of attempting to get the wallet from Foster, the officer forced Foster to the floor and placed Foster in handcuffs. The officer's ankle broke in three places during this incident. We will mention other details of this interaction between the officer and Foster later in this opinion.

¶4     At trial, the circuit court read the following jury instruction, and we highlight the portions most pertinent to this appeal:

> Resisting an officer as defined in Wisconsin Statutes is committed by one who knowingly resists an officer while the officer is doing any act in an official capacity and with lawful authority. Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following four elements were present:
>
> One, the defendant resisted an officer. A police officer is an officer. To resist an officer means to oppose the officer by force or threat of force. The resistance must be directed to the officer personally. Two, the officer was doing an act in an official capacity. … [P]olice officers act in an official capacity when they perform duties that they are employed to perform. The duties of a police officer include booking or processing a subject after arrest.
>
> *Three, the officer was acting with lawful authority. Police officers act with lawful authority if their acts are conducted in accordance with the law.* In this case it is alleged that the officer was booking or processing the defendant after arrest.
>
> *Four, the defendant knew that [the officer] was an officer acting* in an official capacity and *with lawful authority* and that the defendant knew his conduct would resist the officer.

*See* WIS JI—CRIMINAL 1765 (emphasis added). Foster's trial counsel argued to the jury that, when restraining Foster to obtain the wallet, the officer used

3

"excessive force." According to trial counsel's argument, the alleged excessive force used by the officer was a basis for the jury to conclude that the State failed to prove the third element of the charged crime—that the officer was acting with "lawful authority"—as well as the fourth element—that Foster knew the officer was acting with lawful authority. Foster's trial counsel did not request a jury instruction regarding this defense.[5]

¶5      Foster was found guilty of resisting an officer, causing substantial bodily harm. Foster filed a postconviction motion for a new trial arguing that trial counsel was constitutionally ineffective in failing to request a jury instruction to support Foster's defense that the officer used excessive force, and therefore was not acting with lawful authority, in his interactions with Foster. The circuit court held a *Machner*[6] hearing and denied Foster's postconviction motion. Foster appeals.

¶6      We mention other material facts in the following discussion.

## DISCUSSION

¶7      Foster argues that trial counsel was ineffective for not requesting a jury instruction squarely addressing his theory of defense that the officer used excessive force in his interaction with Foster. We next set forth principles governing ineffective assistance of counsel claims and our standard of review.

---

[5] Neither party argues that the instructions given to the jury included an instruction squarely addressing the excessive force defense advanced by Foster's trial counsel.

[6] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

## I.  Governing Principles and Standard of Review.

## A.  Ineffective Assistance of Counsel.

¶8      To succeed on a claim that ineffective assistance of counsel violated his or her constitutional right to counsel, a defendant "must establish that counsel's performance was deficient and that the deficient performance was prejudicial.  If the defendant fails to satisfy either prong, we need not consider the other."  *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (internal citation omitted).  We decide this appeal on the deficiency prong.

¶9      "To establish that counsel's performance was deficient, the defendant must show that it fell below 'an objective standard of reasonableness.'"  *Breitzman*, 378 Wis. 2d 431, ¶38 (quoted source omitted).  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *see also* *State ex rel. Flores v. State*, 183 Wis. 2d 587, 620, 516 N.W.2d 362 (1994); *State v. Tobatto*, 2016 WI App 28, ¶12, 368 Wis. 2d 300, 878 N.W.2d 701.  "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  There is a strong presumption that trial counsel's conduct falls within this "wide range" of reasonable professional assistance.  *Breitzman*, 378 Wis. 2d 431, ¶38.

¶10     Generally, the failure to request, or object to, a jury instruction in the circuit court results in the forfeiture of any challenges to the instructions on appeal.  *See* *State v. Austin*, 2013 WI App 96, ¶20, 349 Wis. 2d 744, 836 N.W.2d 833.  However, a claimed error in the jury instructions forfeited by trial counsel's

failure to request, or object to, an instruction may be reviewed under a claim of ineffective assistance of counsel. ***Id.***

¶11 Appellate review of an ineffective assistance of counsel claim presents a mixed question of fact and law. ***State v. Cooks***, 2006 WI App 262, ¶34, 297 Wis. 2d 633, 726 N.W.2d 322. We will not disturb the circuit court's findings of fact unless those are clearly erroneous. ***Id.*** The determination of whether counsel's performance falls below the constitutional minimum, including whether trial counsel performed deficiently, is a question of law we review de novo. ***Id.***; ***Breitzman***, 378 Wis. 2d 431, ¶38.

### B. Theory of Defense Jury Instructions.

¶12 We now consider governing principles regarding theory of defense jury instructions. A defendant is entitled to a jury instruction on his or her theory of defense if:

> (1) the defense relates to a legal theory of a defense, as opposed to an interpretation of evidence; (2) the request is timely made; (3) the defense is not adequately covered by other instructions; and (4) the defense is supported by sufficient evidence.

***State v. Coleman***, 206 Wis. 2d 199, 212-13, 556 N.W.2d 701 (1996) (internal citations omitted). Our analysis concerns only the first requirement, that the proposed jury instruction relates to a legal theory of a defense.

¶13 A theory of defense instruction instructs the jury on a legal theory that supports the defendant's assertion that he or she has a defense to the crime charged. ***State v. Dundon***, 226 Wis. 2d 654, ¶46, 594 N.W.2d 780 (1999); *see also* ***State v. Davidson***, 44 Wis. 2d 177, 191-92, 170 N.W.2d 755 (1969). In addition, under the first requirement of the ***Coleman*** test, the requested instruction

must instruct on a valid defense. *State v. Gaudesi*, 112 Wis. 2d 213, 223, 332 N.W.2d 302 (1983). In other words, the requested instruction must correctly state a principle that is recognized as a defense to the crime charged. *Id.* at 223. *See also Dundon*, 226 Wis. 2d 654, ¶46 ("[I]t was not an erroneous exercise of discretion to refuse to instruct the jury on an invalid defense.").

## II. Foster Has Not Established That Trial Counsel's Performance Was Deficient.

¶14    Foster argues that trial counsel's performance was deficient in that trial counsel failed to request a jury instruction on Foster's theory of defense because such an instruction "was crucial to provide legal authority for trial counsel to convince the jury" that, at the time the officer tried to get the wallet from Foster, the officer used excessive force and, accordingly, the officer was not acting with "lawful authority." The State argues that Foster fails to prove deficient performance of trial counsel because Foster's argument does not "fit the facts" of this case. More particularly, the State contends that the specific language taken from part of a footnote in the comment to a standard jury instruction that Foster relies on applies only to an officer's lawful authority when making an arrest. By contrast, the officer's alleged use of excessive force in this case occurred during the booking process, after Foster had been arrested. The State also contends that Foster's argument fails because he does not provide either the instructional language that trial counsel purportedly should have proposed to the circuit court or an argument sufficient to support a theory of defense jury instruction applicable to the circumstances of this case.

### A. Necessary Bases for Foster's Argument.

¶15    We repeat that there is a "strong presumption" that trial counsel's performance falls within a "wide range of reasonable professional assistance." *Breitzman*, 378 Wis. 2d 431, ¶38. We now discuss necessary bases of Foster's argument in order for him to overcome that presumption and establish that trial counsel's performance was deficient in that he did not request in the circuit court a theory of defense jury instruction.

¶16    As already noted, to prove deficient performance a defendant must identify specific "acts or omissions" by trial counsel that fall outside the "range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Flores*, 183 Wis. 2d at 620. Further, a circuit court must ensure that jury instructions "fully and fairly inform the jury of the rules of law applicable to the case" and that the instructions "assist the jury in making a reasonable analysis of the evidence." *Coleman*, 206 Wis. 2d at 212. From those precepts, it is manifest that, for Foster to establish deficient performance in these circumstances, he must present this court with material, specific language for a theory of defense jury instruction that would have fully and fairly informed the jury of the applicable rules of law and assisted the jury in reasonably analyzing the evidence. The proposition has been summarized in persuasive authority as follows:

> When the claim of error is that counsel was ineffective for failing to request that a jury instruction be given (or failing to argue that the instructions given did not accurately or completely instruct the jury on the law), the appellant must, at the very least, explain what parts of the [challenged] instruction were inadequate or what the instruction should have said.

*State v. Powell*, 2020 UT App 63, ¶47, 463 P.3d 705, 717 (internal quotation marks omitted).[7]

¶17 This is an application of the rule that, in order to prove deficient performance, a defendant is required to establish that trial counsel's performance fell below "an objective standard of reasonableness." *Breitzman*, 378 Wis. 2d 341, ¶38 (quoted source omitted). For trial counsel to have properly asserted a theory of defense instruction, counsel would have been required to articulate for the circuit court a basis for a specifically worded instruction, along with applicable supporting authority. *See Gaudesi*, 112 Wis. 2d at 223 (stating that the theory of defense instruction must correctly state principles supporting a valid defense); WIS. STAT. §§ 972.10(5), 805.13.[8] Accordingly, in order to show that trial

---

[7] This conclusion regarding postconviction counsel's burden is also supported by the fact that trial counsel would have been required to provide specific instructional language to the circuit court. *See* WIS. STAT. § 972.10(5) (stating that, when a party requests that an instruction be given to the jury, the instruction "shall be reduced to writing" and filed with the clerk unless the court otherwise directs).

[8] WISCONSIN STAT. § 972.10(5) states in pertinent part:

> Counsel for the parties [in a criminal case] … *shall specify and state the particular ground* on which the instruction is objected to, and it *shall not be sufficient to object generally* that the instruction does not state the law, or is against the law, but *the objection shall specify with particularity* how the instruction is insufficient or does not state the law or to what particular language there is an objection.

(Emphasis added.) WISCONSIN STAT. § 805.13(3) also applies in a criminal case (*see* WIS. STAT. § 972.11(1)) and states in pertinent part:

> Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, *stating the grounds for objection with particularity on the record.*

(Emphasis added.)

counsel's performance was deficient, Foster must present this court with an argument that supports the asserted complete theory of defense instruction in these circumstances.

¶18    In light of those authorities, we next consider Foster's argument in this court.

## B.  Foster's Argument.

¶19    Foster fails to cite case law or statutory authorities as support for the theory of defense instruction that he argues trial counsel should have requested. Rather, Foster relies solely on a portion of footnote 8 in the comment to WIS JI— CRIMINAL 1765—RESISTING AN OFFICER.  That part of the footnote to the commentary reads:

> The [Criminal Jury Instruction] Committee suggests specifying the lawful function being performed [by the officer] and, if raised by the evidence, instructing the jury on the applicable legal standard.…
>
> ….
>
> [I]f the evidence raises a question about the legality of an arrest, something like the following may be helpful:
>
> In this case, it is alleged that the officer was making a lawful arrest.  An arrest is lawful when the officer has reasonable grounds to believe that the person has committed a crime.  An officer making an arrest may use only the amount of force reasonably necessary to take the person into custody.

WIS JI—CRIMINAL 1765 Comment, n.8.

¶20    Regarding the language that an asserted complete theory of defense jury instruction would contain in this particular circumstance, Foster offers only two statements in briefing in this court.  In his brief-in-chief, Foster states:  "Of

course, counsel should have wanted the tailored jury instruct[ion] on the issue of excessive force if that were an option." In reply, Foster states only that the language in the footnote just quoted is "flexible enough to allow a modification of the resisting instruction to include language that an officer securing detaining or restraining a person may use the amount of force reasonably necessary to complete the process, or words to that effect."

## C. Analysis.

¶21 We now summarize three integral components of an asserted complete theory of defense jury instruction in the context of this case. We reject Foster's deficient performance contention because he has not provided to this court specific instructional language and developed arguments, with support from applicable authorities, that encompass and discuss any of those components.

### *1. Standards to Gauge the Officer's Conduct.*

¶22 The footnote in the comment to the standard jury instruction Foster exclusively relies on states that, in drafting a jury instruction regarding the crime of resisting an officer and the "lawful authority" of the officer, the jury should be instructed "on the applicable legal standard" concerning the officer's conduct. WIS JI—CRIMINAL 1765—RESISTING AN OFFICER Comment, n.8. As to the standard that applies to an excessive force claim, Foster concedes in briefing in this court that: "The threshold between reasonable and excessive force is not easy to define." Yet, Foster does not propose a complete jury instruction, or a developed argument, that specifies the standard a jury applies in determining whether the officer used excessive force in his interaction with Foster. That standard must be enunciated in order for the jury to assess whether the officer used

excessive force in obtaining the wallet from Foster based on the facts presented at trial, which we next sum up.

¶23 The officer testified to the following. When the officer called for backup, Foster had "what I consider a more aggressive demeanor," and Foster was standing "like how a boxer would stand." The officer wanted to handcuff Foster and "basically freeze the situation, again, for his safety and mine." He asked Foster to give him the wallet. When Foster repeatedly refused, the officer "grabbed him" because he did not know how long it would be before backup arrived and, judging from Foster's "posture and his demeanor," he thought that "possible physical confrontation was imminent." The officer said that Foster continually physically resisted, and the officer moved Foster from standing against a wall to the ground because "it's just easier when somebody's on the ground and they're actively resisting to control them" because "they're not standing on their feet as far as swinging at you or anything like that." The officer testified on cross-examination that Foster "never verbally threatened me," and he engaged Foster physically a relatively short time after Foster refused to give up the wallet. In argument to the jury about alleged excessive force, defense trial counsel asserted that "Foster was on the ground in 13 seconds, from the time his back hit the wall to when he was on the ground," and "[the officer] could have said, Mr. Foster, I need to handcuff you again, I don't like where this is going. [The officer] [c]ould have [given Foster] some verbal communication."

¶24 Foster has failed to provide proposed jury instruction language, and made no argument, regarding the standards a jury applies in considering an allegation of excessive force by the officer under these facts. That failure by Foster confirms that Foster has not specified which "legal theory of … defense"

12

his proposed instruction would follow, as we now discuss. *See Coleman*, 206 Wis. 2d at 212-13.

¶25    As one example, Foster does not state whether the officer's purported use of excessive force constituted a violation of the common law or was a constitutional violation. *See **Robinson v. City of West Allis***, 2000 WI 126, ¶30, 239 Wis. 2d 595, 619 N.W.2d 692 ("Although this court has not often addressed excessive use of force [by law enforcement] as a constitutional violation pursued under 42 U.S.C. § 1983, we have addressed it as a common law cause of action."). Foster does not attempt to address either the common law or the constitutional standards for an officer's use of force in a jail against a pretrial detainee (as Foster was at the germane time). The standards regarding use of force in an arrest as opposed to in a jail can be distinct.

¶26    That distinction is recognized in cases concerning allegations of constitutional violations through purported excessive force. "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself [or herself] in the criminal justice system." ***Porro v. Barnes***, 624 F.3d 1322, 1325 (10th Cir. 2010). Excessive force during an arrest must be "analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." ***Graham v. Connor***, 490 U.S. 386, 395 (1989). On the other end of the spectrum, "prisoners already convicted of a crime who claim that their punishments involve excessive force must proceed under the more restrictive terms of the Eighth Amendment's 'cruel and unusual punishments' clause." ***Porro***, 624 F.3d at 1325-26. Under this standard, courts ask whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously

13

and sadistically to cause harm." ***Id.*** at 1326 (citing ***Hudson v. McMillian***, 503 U.S. 1, 6-7 (1992)).

¶27 In the time between arrest and post-conviction punishment, courts apply the "due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." ***Id.*** (citing ***County of Sacramento v. Lewis***, 523 U.S. 833, 843 (1998)). This category of excessive force claims was addressed in ***Kingsley v. Hendrickson***, 576 U.S. 389 (2015). In ***Kingsley***, the court held that the appropriate standard for a pretrial detainee's Fifth or Fourteenth Amendment excessive force claim is "objective reasonableness." However, the court noted that those standards are not the same as excessive force standards applied to an arrest. ***Kingsley***, 576 U.S. at 397. Pertinent to this appeal, the court stated:

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."[9]
>
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and

---

[9] Germane to the Supreme Court's point about policies and procedures, the officer testified regarding the reasons that the Watertown Police Department inventoried property, including the wallet, of an arrestee during booking. The evidence was that those procedures allowed the person arrested to verify that all property had been inventoried and the procedures ensured that no weapons or contraband were hidden by the arrestee. Here, in argument to the jury, trial counsel contended that the officer was not acting with lawful authority "because he was not following the many general orders, the procedural guidelines that officers are supposed to follow."

> the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (internal citations omitted).

¶28 These are integral components that would have to be considered in any jury instruction regarding the use of force against a pretrial detainee by an officer. However, Foster fails to recognize or discuss these components of an asserted complete theory of defense jury instruction in briefing in this court.

### *2. Foster's Use of Force.*

¶29 Second, Foster does not mention, or propose jury instruction language regarding, the legal basis for him to have used force against the officer.

¶30 At least in the context of an arrest, our supreme court has stated that, when an officer uses excessive force during an arrest, the arrestee has the statutory right to self-defense under WIS. STAT. § 939.48. *State v. Hobson*, 218 Wis. 2d 350, 368 n.17, 577 N.W.2d 825 (1998) (noting that the right to use force when resisting an arrest in which an officer uses excessive force falls under the statutory privilege of self-defense); *see also State v. Reinwand*, 147 Wis. 2d 192, 201, 433 N.W.2d 27 (1988) (stating that, if an officer employs excessive force in making an arrest, the person arrested may invoke the self-defense privilege and counter with reasonable force to protect himself or herself).

¶31 Of importance to our analysis is that an officer's authority to use force is intertwined factually and legally with the defender's right to respond with force. Put another way, the self-defense privilege of an arrestee is coextensive with the officer's use of force. *Id.* at 201-202 ("Because the privilege exists for

15

the physical protection of the defender, it should end when the need for that protection disappears—that is, when the use of excessive force has ceased or abated.").

¶32    But, Foster has not provided any framework for analyzing his physical resistance against the officer and whether it was allowed as self-defense in the context of a pretrial detainee. More specifically, Foster has not provided any instructional language, or an argument, regarding the standards a jury must apply to determine whether his use of force as a pretrial detainee in resisting the officer was reasonable and privileged during the incident.

### *3. Applicable Burden of Proof.*

¶33    Third, there are distinct burdens of proof for constitutional and common law claims of excessive force. ***Shaw v. Leatherberry***, 2005 WI 163, ¶21, 286 Wis. 2d 380, 706 N.W.2d 299. State law tort actions require the plaintiff to satisfy the jury "by a clear and satisfactory preponderance of the evidence." ***Id.***, ¶20. In contrast, alleged constitutional violations require plaintiffs to convince the jury to a "preponderance of the evidence." ***Id.***, ¶45. Foster fails to provide us with authority or specific jury instruction language addressing the applicable burden the jury must apply regarding the officer's use of force.

¶34    In a similar vein, the language from the comment in the standard jury instruction on which Foster relies—WIS JI—CRIMINAL 1765—RESISTING AN OFFICER—may apply to a theory of defense as the predicate for invoking the recognized affirmative defense of privilege of self-defense under WIS. STAT. § 939.48 or it may, in contrast, apply to negate the "lawful authority" element of the charged crime, resisting an officer. *See* ***State v. Staples***, 99 Wis. 2d 364, 376, 299 N.W.2d 270 (Ct. App. 1980); *see also* WIS JI—CRIMINAL 795—LAW NOTE:

16

PRIVILEGE: RESISTING AN UNLAWFUL ARREST. The distinction makes a difference in the jury instruction given. *Staples*, 99 Wis. 2d at 376 (stating that, if self-defense is properly raised by the defendant, the jury is instructed that the State must prove that the defendant was not privileged in his or her use of force). Foster does not tell us which of these two theories of his excessive force defense—or any other theory of that defense—trial counsel should have pursued.

¶35 In sum, Foster's deficient performance assertion fails because Foster does not recognize or argue any of the components just discussed. Foster does not provide material, complete language regarding a theory of defense jury instruction that fully and fairly would have informed the jury of the applicable law in these factual circumstances. As a result, Foster has not met his burden to identify specific "acts or omissions" by trial counsel that fall outside the "range of professionally competent assistance." *See Strickland*, 466 U.S. at 690; *Flores*, 183 Wis. 2d at 620. In addition, because Foster's truncated argument does not examine the integral components just discussed and is not supported by applicable authorities, we have no basis to conclude that the circuit court would have been required to give a theory of defense jury instruction in these circumstances. Accordingly, Foster has not established that trial counsel's performance fell below an objective standard of reasonableness. *See Breitzman*, 378 Wis. 2d 341, ¶38.

¶36 For Foster to prevail on his deficient performance argument, we would be required to draft the material portions of a complete jury instruction for Foster and construct an argument in support. However, we cannot serve as both advocate and judge. *State v. Anderson*, 2017 WI App 17, ¶28, 374 Wis. 2d 372,

17

896 N.W.2d 364 ("We will not abandon our neutrality to develop arguments for the parties.").[10]

## CONCLUSION

¶37    For the foregoing reasons, we affirm the judgment and order of the circuit court.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.

---

[10] We need not reach other arguments raised by the parties, including the issue of prejudice to Foster, because the analysis above on the deficient performance prong is dispositive. *See* ***State v. Breitzman***, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.